## STANLEY vs. NELSON.

[ACTION ON NOTE UNDER SEAL GIVEN FOR HIRE OF SLAVE.]

1. *Slave may be agent.*—A slave may act as the agent of his owner or hirer.
2. *Contract founded on illegal consideration.*—A contract founded directly on an illegal consideration, whether the illegal act is in terms prohibited, or is only punished with a penalty,—is void.
3. *Contract made with slave while suffered to go at large.*—If a slave, while permitted by his owner or hirer, contrary to the provisions of the act of 1805 (Clay's Digest, 541, § 12), to go at large, and to act as a freeman, makes a contract for the hire of another slave to work with him, and a white man gives his note under seal for the hire, the note is void.
4. *Charge upon evidence, when erroneous.*—A charge upon the effect of evidence, which is susceptible of a different construction from that placed on it by the court, is an invasion of the province of the jury, and therefore erroneous.
5. *Appropriation by slave, while suffered to go at large, of proceeds of his labor.*—If a slave, while suffered by his owner or hirer to go at large and act as a freeman, appropriates the proceeds of his labor, with the consent of his owner or hirer, to the payment of a debt, the owner or hirer cannot afterwards reclaim them; and, *a fortiori*, a third person cannot afterwards claim to have them applied in payment of a liability incurred by him for the slave.

APPEAL from the Circuit Court of Limestone.

Tried before the Hon. JOHN E. MOORE.

This action was founded on a promissory note, of which the following is a copy :

"$140. Twelve months after date, I promise (to pay), to the order of Thomas A. Nelson, one hundred and forty dollars, for the hire of George for the year 1852. Witness my hand and seal, January 2, 1852."

(signed)    "H. Stanley."

A credit was endorsed on the note, in these words : "Rec'd $65 85 on the within, for R. Donnell's note, June 1, '53, less the interest off, January 2, 1853." The only plea was the general issue, "with leave to give in evidence any defense which would be good if well pleaded."

On the trial, as appears from the bill of exceptions, after the plaintiff had offered in evidence the note declared on, the defendant read in evidence certain interrogatories which he

had propounded to the plaintiff under the statute, together with the answers thereto, which were as follows: "The hire of a negro boy, named George [was the consideration of the note sued on.] The price for the hire of said negro was agreed on with the boy Spencer, provided he brought me a note, or bond, from some responsible white man, who should control said boy George during that year. The said boy Spencer [handed me the note.] I did not make any bargain with the defendant at the time of hiring him said boy, but afterwards spoke to him on the subject, and he acknowledged the transaction. I do not recollect the time [of this conversation:] it was after the maturity of the note given for the hire, and on the public square in Athens. I spoke to the defendant several times about the note, and he never objected to its payment, or intimated that he was not bound for the same. The boy Spencer was engaged in the business of painting. The business [in which the boy George was to be employed] was not particularly agreed on, but I supposed he would be kept at his trade, which was painting. I did not hire him specially to learn the art of painting; he was then a good painter. The boy Spencer belonged, I think, to Mr. Thompson, though he was that year under the control of Wm. E. Hoke. I think he was in the habit of making his own contracts, which were sanctioned and acknowledged by said Hoke as his own. He continued to do this, so far as I know, during the year for which George was with him. I received from said Spencer that year, with the understanding that they were to go to the credit of an account due me for the hire of George for the preceding year, the following amounts: for painting my house, $13 50; J. H. Malone's note, due January 1, 1853, $67 10. I also received from said Spencer, with the agreement that the same was to be credited on defendant's note, Robert Donnell's note, for work, paints, &c., furnished, which netted, on the 2d January, 1853, $65 85, and which I took for the protection of said defendant. In this item ($65 85) I think the work done was worth $20, or $25; the balance being for paints, &c., furnished. I do not know [whether the boy George was in the possession of the defendant, or served him, during that year.] I exercised no control over him during that year, presuming

that his owner for the time being (to-wit, said Henry Stan-
ley) would direct his movements; and whether he got the
benefit of his services, or any portion of them, I do not know."

"The defendant also introduced as a witness William E.
Hoke, who testified that he knew the boy Spencer, and that
he belonged to Madison Thompson; that he had hired
Spencer from his owner for the year 1852; that he permitted
said Spencer, who was a painter, to go at large during the
term of his hiring, to make his own contracts for work and
services, and to collect the money therefor; that witness paid
Thompson the hire, and that the understanding was, that
Spencer was to pay witness the amount of the hire, and was
himself to have the balance of his earnings; that Spencer
brought him notes and accounts against persons for whom he
worked, sufficient to pay said hire; that witness claimed
nothing over what said hire amounted to, and recognized the
right of said Spencer to make collections for his said work,
but, if any had refused to pay, witness then considered that
he had a right to sue therefor; that Spencer did business in
the same way in the year 1851, and for several years prior
thereto; that plaintiff's said boy, George, was with said
Spencer during the years 1851 and 1852, and worked with
him."

"This was all the evidence in the cause;" and thereupon
the defendant requested the following charges to the jury:

"1. That if they found that the note sued on was given
upon the contract, and in the manner, stated in the plaintiff's
answers, then the plaintiff could not recover thereon; which
charge the court refused to give, but instructed the jury, that
if the note was given as specified in said answers, the plaintiff
was entitled to a verdict. To the refusal to charge, and to
the charge given, the defendant excepted.

"2. That if they found that the note sued on was given for
the hire of the negro boy George for the year 1852; that
plaintiff bargained and hired said boy to Spencer, who was
himself a slave, but was permitted by his owner to go at
large and contract for himself, and received the note sued on
from said Spencer, and never had any interview with the de-
fendant until after the maturity of the note; and that said
George worked with said Spencer during the term of hiring,

and did not work with the defendant,—then the plaintiff was not entitled to recover. The court refused this charge, and the defendant excepted.

"3. That if the boy Spencer was a slave, but was suffered to go at large, and to hire himself out, or to make contracts for his services, and to receive the money therefor; and that plaintiff, knowing this, hired the boy George, to go at large with said Spencer, and to work with him, and suffered him so to do during the term of hiring; and that the said note was taken for such hiring,—then the said note is void, and a recovery cannot be had on it. The court refused this charge also, and the defendant excepted.

"4. That if the jury found that the plaintiff received the sums of money mentioned in his answers, from the proceeds of the labor of said Spencer and George during said hiring, then the defendant was entitled to a credit therefor on the note sued on, notwithstanding the said agreement with said Spencer; and that said Spencer could make no valid agreement to appropriate said proceeds of said labor to the hire of George for the preceding year. The court refused this charge also, and the defendant excepted."

The charge given, and the refusals to charge as asked, are now assigned as error.

Robinson & Jones, for the appellant.

Luke Pryor, contra.

WALKER, J.—There are three questions, arising from the charges given and refused in this case, the decision of which is necessary and appropriate. Those questions may be thus stated: 1. Can a slave act as the agent of his owner, or hirer? 2. If the owner or hirer of a slave, in 1852, suffered him to go at large, and to act for himself as a freeman; and if, while so going at large and acting, the slave made a contract for the hire of another slave, to work with him, for a stipulated sum, for which a white man gave his bond, is that bond a void instrument? 3. If the slave, while going at large and acting for himself, by the owner or hirer's consent, as above stated, appropriated debts in his favor for services rendered by him, to the payment of another debt,

which the slave owed the payee in said bond, has the maker of the bond a right to have the debts so appropriated credited upon his bond ?

The first question we decide in the affirmative, on the authority of the case of the Governor v. Donly, 14 Ala. 471; see, also, Powell v. The State, 27 *ib.* 51.

As the bond sued upon is dated 2d January, 1852, its validity is determinable by the law as it then existed. The statute law of this State, as it existed in 1852, which it is necessary to notice, may be found in Clay's Digest, §§ 12–13, page 541. Section 12 is as follows: "If any master, or owner of a slave, shall license such slave to go at large and trade as a freeman, the master or owner shall forfeit and pay the sum of fifty dollars, one moiety to the use of the person suing for the same, and the other moiety to the use of the State; and if, after conviction, such slave shall be so found going at large and trading, the master or *overseer* (?) shall again be liable to the like penalty, to be recovered as aforesaid; and so, as often after such conviction as such slave shall be found so going at large and trading." The part of section 13 pertinent to the question to be decided, is as follows: "If any person shall permit his or her slave to go at large, or hire him or herself out, every person or persons so offending shall forfeit and pay to the use of the State the sum of fifty dollars."

These statutes had their origin in a wise and conservative legislative policy. Their purpose was, to prevent the demoralization and corruption of slaves, resulting from a withdrawal of discipline and restraint from them, and to prevent the pernicious effect upon the slave community of the anomalous condition of servitude without a master's control. If the owner or hirer of a slave permits him to go at large, to make contracts, and to carry on business as if he were a freeman, notwithstanding the slave may make compensation for this privilege, the law, as it existed in 1852, is not only violated in its letter, but in its wise policy. The act of the negro, in going at large and contracting for himself by the owner or hirer's permission, must be deemed a violation of the same law, because it is that which subjects the master to a penalty. It can not be lawful in a negro to do that by the master's

permission, which it is unlawful in the master to permit him to do. The law condemns the going at large and trading of a slave, as a freeman, by the license of his owner; and the acts of the slave, done by such license, are illegal, notwithstanding the penalty is visited upon the person giving the permission, and not upon the slave.

Section 13, in addition to what is copied above from it, also provides, that any person may apprehend a slave, going at large, or hiring himself out, and carry him before a justice of the peace, who may commit him to jail. This is persuasive to show that the legislature designed to condemn as illegal the act of the slave, as well as the permission of the owner.

A contract, made directly upon a consideration which is illegal, is void.—Chitty on Contracts, 571; Tennison v. Martin, 13 Ala. 21; Renfro v. Heard, 14 *ib*. 24; Branch Bank v. Crocheron, 5 *ib*. 250; Smith v. Ala. Life Ins. & T. Co., 4 *ib*. 558. The law is the same, although the law which is violated provides a penalty for the act done, and does not in terms prohibit it.—Parsons on Contracts, 380, 381, 382, and note *a* on page 382, which collates the American authorities. It can make no difference, that the license to go at large and contract as a freeman is given by the hirer instead of the owner of the slave, for the hirer is, for the term of the bailment, the owner of the negro for all the purposes of the statutes cited.

By the principles which we have laid down, we are led to the conclusion, that the second question propounded in the outset of this opinion must be decided in the affirmative; or, in other words, if the bond sued on was given directly in consideration of a contract, made with a slave, to hire a negro to the slave, while the slave was by the permission of his owner or hirer going at large and contracting as a freeman, it is void.

The court charged the jury, that if the bond sued upon was given as specified in the plaintiff's answers to interrogatories, the plaintiff was entitled to a verdict. The effect of this charge was, that the contract, as set forth in the testimony elicited upon a discovery obtained from plaintiff, was one upon which a recovery might be had, and the jury must find for the plaintiff if the evidence in the case showed that

the contract was as set forth in that particular testimony. All the evidence in the case is set out in the bill of exceptions. The charge given can only be maintained, as a correct exposition of the law, in the event it is found that the testimony obtained by discovery from the plaintiff did not warrant any inference fatal to his right of recovery in the suit. It is an invasion of the province of the jury for the court to instruct them, to the prejudice of a party, as to the effect of evidence susceptible of a construction different from that placed upon it by the court.—Hollingsworth v. Martin, 23 Ala. 591; Dill v. The State, 25 ib. 15.

The court most probably gave the charge excepted to, upon the supposition, that the testimony afforded by plaintiff's answers established the fact that the slave, in making the contract, acted as the agent of his hirer or owner. We do not intend to determine, what is the proper construction of the testimony; but we do decide, that the court was not authorized to assume that no inference adverse to the plaintiff's right of recovery could be drawn from it. The question should have been left to the jury, whether, in making the contract for hire, the slave was acting for and as the agent of his hirer or owner, or whether he was acting for himself, when he was going at large and contracting as a freeman by the license or permission of his owner or hirer.

The second charge asked by the defendant was altogether consistent with the principles laid down in this opinion, and the court erred in refusing to give it.

After a slave has, with his owner or hirer's consent, made acquisitions by his labor, and, in the absence of a revocation of such consent, has absolutely disposed of them, it would not be competent for the master even to reclaim them.—Shanklin v. Jones, 9 Ala. 271. Still less could any third person reclaim such acquisitions, after they had been so disposed of by the slave, for the purpose of having them credited on a liability incurred by him for the benefit of the slave. The slave appropriated an account and note given for his services, while going at large, to the payment of a debt which the plaintiff held on the slave, aside from the bond sued on. The defendant insisted that the amount of the note and account so appropriated should be credited on the bond sued on. We

think he was not entitled to a credit asked upon such a state of facts, and that the court properly so ruled. In our opinion, the negative of the third question stated at the commencement of this opinion is the law, and the last charge asked by the defendant was properly refused.

The judgment of the court below is reversed, and the cause remanded.