## MARTIN *vs.* REED.

[ACTION ON PROMISSORY NOTE, AGAINST MAKER.]

1. *Validity of contract made with slave.*—A promissory note, given to a slave, for money borrowed from him by a white man, is void, and will not support an action.

APPEAL from the Circuit Court of Russell.
Tried before the Hon. ROBERT DOUGHERTY.

THIS action was brought by John M. C. Reed, against W. B. Martin, and was founded on the defendant's promissory note for $58, dated the 14th January, 1856, and payable on the 14th January, 1857. The complaint was in the form prescribed by the Code, (page 551,) for an action on a promissory note "by payee against maker." The defendant filed two pleas, the second of which was in these words: "For answer to the said complaint, the defendant says, that said promissory note, which is the foundation of this suit, was given to Henry, a slave of John Godwin, deceased, for money borrowed from said Henry; that plaintiff obtained said note from said Henry by transfer of said Henry; that said Henry acted and contracted for himself, and that his transfer to plaintiff was void; wherefore defendant says, that plaintiff ought not to recover in this action." The circuit court sustained a demurrer to this plea, and its judgment on the demurrer is now assigned as error.

L. W. MARTIN, for the appellant, cited *Stanley v. Nelson*, 28 Ala. 514; *Tannis v. Doe d. St. Cyre*, 21 Ala. 454; *Shanklin v. Johnson*, 9 Ala. 271; *Brandon v. Bank of Huntsville*, 1 Stewart, 320; Code, § 1018.

PHILIPS & WEEMS, *contra.*—The law presumes, that money in the possession of a slave belongs to his master, and that all transfers, &c., are made by and with the consent of the master; and the plea does not state facts which negative this presumption.

STONE, J.—The *status* of a slave, under our laws, is one of entire abnegation of civil capacity. He can neither make nor receive a binding promise. He has no authority to own any thing of value, nor can he convey a valuable thing to another. Hence, he cannot, of himself, give a consideration, "valuable in the law," which consideration is necessary to uphold an executory promise; and indeed, "any person who sells to, or buys or *receives* from any slave,

any article or commodity of any kind or description, [other than vinous or spirituous liquors,] without the consent of the master, owner, or overseer of such slave, verbally or in writing, expressing the articles," &c., is guilty of a misdemeanor.—Code, § 3285. Vinous and spirituous liquors had been provided for in a previous section.—Code, § 3283. Money received from a slave comes within section 3285. We have, then, the case of a slave, who could not be the owner of money, but holding money, which, in the law, was the property of his master, (*Webb v. Kelly*, at the present term,) having no civil capacity to part with that money, or to receive a promise to repay the same, but who does part with it to a white person,—the latter, in the act of receiving it, committing an indictable offense under our penal statutes. Nay more : Mr. Martin, in receiving the money from the slave, and retaining it, subjected himself to an action at the suit of Mr. Godwin, for money had and received.—*Brandon v. Huntsville Bank*, 1 Stew. 341. Can a right of action be based on such a promise as this?

In the leading case of *Fable v. Brown*, (2 Hill's Ch. 397,) the court of appeals of South Carolina—Ch. Harper delivering the opinion—ruled, that "an executory contract, made with a slave, cannot be enforced. No action could be maintained on a bond or note given to a slave. Neither master nor slave could maintain an action," &c. In the case of *Gregg v. Thompson*, (2 Const. Rep. 330,) the suit was brought by the master, on a note payable to his slave. The court decided, that the action could not be maintained. See, also, Cobb on Slavery, § 268.

The defense set up in the second plea, if proved, will bar all action on the note in suit; and the circuit court erred in sustaining the demurrer to it.

Reversed and remanded.