## WEBB *vs.* KELLY.

[DETINUE FOR SLAVE.]

1. *General objection to evidence.*—A general objection to evidence, a part of which is legal, may be overruled entirely.
2. *Admissibility of declarations as part of* res gestæ.—The declarations of the vendor of a slave, made "a few days after the sale," to the effect that, if he had known that the slave was not going to Texas, (whither the purchaser had represented that he intended to carry

him,) he would not have sold him, are not evidence for the declarant, as a part of the *res gestæ*, in a suit involving the validity of the sale.

3. *Admissibility of record as evidence in another suit.*—In detinue for a slave, brought by the vendor against the purchaser,—the material inquiry being, whether the purchase-money was furnished by the defendant, or by the slave himself; and the defendant, for the purpose of showing that the plaintiff, before the sale, "knew that the slave had money, and permitted him to have, use and dispose of it as he pleased," having read in evidence a receipt, by which the plaintiff acknowledged to have received a sum of money, for safe-keeping, from the slave and his mother,—the record of a suit instituted by the defendant, after the sale, in the name of the owner of the slave's mother, (but without his authority or knowledge, and afterwards dismissed by him,) for the recovery of this money from the plaintiff, is not competent evidence for the plaintiff, " to explain said receipt, and to show that the defendant regarded the money as belonging to the slave's mother."

4. *Personal attendance of witness, and suppression of deposition.—Semble,* that the act "to compel the personal attendance of witnesses in civil cases," (Session Acts 1857-8, p. 34,) does not apply to a witness who is confined in jail under a judicial sentence; but, if the proper affidavit has been made, and the attendance of the witness can be procured, the deposition ought to be suppressed.

5. *Release of surety on detinue bond, and examination as witness.*—The surety on a detinue bond may be released, and examined as a witness for his principal, on the execution by the latter of a new bond, with other good and sufficient sureties; but it is not permissible to erase the surety's name from the bond, against the objection of the obligee, and substitute the name of another surety in his stead.

6. *Master's right to money acquired by slave ; validity of contract for benefit of slave.*—If the master knowingly permits his slave to acquire money, and to pay it out to a third person, in a fair business transaction, he cannot afterwards reclaim it; but, if such third person receives and holds the money for the benefit of the slave, and as his bailee, and it is afterwards used, without the knowledge of the master, in purchasing the slave for himself from the master, the contract is void, and does not divest the title of the master.


APPEAL from the City Court of Mobile.
Tried before the Hon. ALEX. McKINSTRY.


THIS action was brought by James Kelly, against John T. Webb, to recover a slave named Wash, under the following circumstances : The slave belonged to the plaintiff, and was employed by him as a cab-driver in the city of Mobile, but was permitted to retain for himself about one-half of his wages. The defendant procured one Williams to negotiate

with plaintiff for the sale of the slave ; the plaintiff sold him to Williams, on the 16th July, 1857, for one thousand dollars, and executed to Williams a bill of sale, with war-ranty of title and soundness; and, on the next day, Wil-liams executed a similar bill of sale to A. Brooks, who then paid over the purchase-money to the plaintiff. A part of the purchase-money was paid by the draft of one Lander-milk for $500, which he had given to the slave for borrowed money ; and the defendant's evidence tended to show that he had himself furnished a portion of the residue. The plaintiff contended, that the purchase by Williams was made at the instigation of the defendant, under an agree-ment between him and the slave that the purchase should enure to the benefit of the slave, and that the money was in fact furnished by the slave. Williams testified, that he had no interest whatever in the slave, and that he made the purchase for, and at the instance of the defendant. Brooks testified, " that he never had or claimed any title to the slave, and never paid any of his own money for him ; but that the title was made to him to oblige the defendant, who did not want to be known in the transaction, and who brought the money to him." During the negotiations between the plaintiff and Williams, the latter represented, " that he lived in Texas, where the slave had relatives, and intended to leave for Texas, with the slave, so soon as the purchase was concluded." A witness for the plaintiff stated, " that he heard plaintiff say, a few days after the sale, that he would not have sold Wash, if he had known that he was not going to Texas, where he had kin." The court admit-ted this statement as evidence, as a part of the res gestæ, against the defendant's objection ; to which the defendant reserved an exception.

Before the trial commenced, the defendant moved the court to suppress the deposition of one Mary Lebonte, which had been taken on interrogatories and cross-inter-rogatories while the witness was in jail under a judicial sentence ; and stated to the court, " that he had made the statutory affidavit to procure the personal attendance of

said witness, (Acts 1857–8, p. 34,) and that she was then present in the court-house, under the order of the court." The court refused to suppress the deposition, "on the ground that the statute did not apply to witnesses who were in jail, under judicial sentence, for an offense against the criminal laws;" but gave leave to the defendant to put the witness on the stand as his own witness, if he desired to do so. The defendant declined to introduce the witness as his own, and reserved an exception to the overruling of his motion to suppress the deposition. During the trial, when the deposition of this witness was offered in evidence to the jury, the defendant moved the court to suppress the answer to the fourth interrogatory, which was in these words: "Wash pretended to be lame, in order that he might induce Mr. Kelly to sell him. I have heard him say that this was his object. It was a mere pretense: he was not lame. When he saw Mr. Kelly or his friends, he would make out that he was lame. In the house, whenever I saw him, he walked straight. He often talked of how he was trying to fool Mr. Kelly." No ground of objection to this answer was specified. The court refused to exclude it, and the defendant excepted.

The defendant had proved, that the plaintiff, prior to the sale to Williams, permitted the slave to retain a great part of his earnings, to employ counsel to defend himself, when prosecuted for an infraction of the city laws, &c.; and, "for the purpose of showing that the plaintiff knew, before said sale, that the slave had money, and permitted him to have, use and dispose of it as he pleased," had read in evidence a receipt, signed by plaintiff, in these words: "Received from the boy Wash and his mother, Clarissa, four hundred dollars, for safe-keeping;" on which were endorsed these words: "Paid on the within, two hundred dollars." "To explain said receipt, and to show that the defendant regarded the money as belonging to said Clarissa," the plaintiff offered in evidence the record of a suit, instituted against him, after the sale, in the name of one Wiley, (who was the owner of Clarissa,) for the recovery of the money

specified in the receipt; accompanied with the parol testimony of said Wiley, to the effect that said suit was instituted by the defendant, without his authority or knowledge, and was dismissed by him, at the defendant's cost, before trial. The defendant objected to the admission of this record as evidence, on the ground that it was irrelevant; the court overruled his objection, and he excepted.

On the institution of the suit, the defendant having failed to give the statutory bond for the forthcoming of the slave, the plaintiff gave bond, with W. C. Wright and T. H. Robinson as his sureties; and the possession of the slave was delivered to him by the sheriff. During the trial, the court allowed the plaintiff, against the defendant's objection, to erase the name of Robinson from the bond, and to substitute the name of one Masterson in its stead, in order that he might examine Robinson as a witness; to which action of the court the defendant reserved an exception.

The defendant requested the court to instruct the jury, " that if they believed, from the evidence, that the plaintiff permitted the slave Wash to retain a part of his earnings for himself, and to use and dispose of the money he was thus permitted to acquire as he pleased; and that Wash, in the absence of a revocation of this consent, afterwards loaned the money thus acquired to Landermilk, and it was used by Williams in the purchase of Wash, then the plaintiff would have no right to reclaim the money so acquired, used and disposed of by Wash." The court refused to give this charge, and the defendant excepted to its refusal.

All the rulings of the court to which, as above stated, exceptions were reserved, are now assigned as error.

SMITH & CHANDLER, for appellant.—1. The deposition of the witness Lebonte ought to have been suppressed, and the witness examined personally on the stand. The general policy of the law requires, that witnesses should be examined orally, in open court, whenever it can be done. The act of 1858 is very comprehensive in its language, and does not exempt from its operation witnesses

22

who are confined in jail; nor does any reason, or principle
of public policy, demand that they should be excepted.
Even if the act did not apply, it was the duty of the court
to suppress the deposition, when it was made to appear
that the witness was in fact present in court.

2. The answer of this witness to the fourth interroga-
tory, consisting of the declarations of the slave, was not
competent evidence against the defendant.—*Mauldin &
Terrell v. Mitchell*, 14 Ala. 814.

3. The declarations of the plaintiff, made several days
after the sale, constituted no part of the *res gestæ*, and
were not made in the presence of either Williams or the
defendant.  A party cannot be permitted thus to manufac-
ture evidence for himself.—*Hooper v. Edwards*, 20 Ala. 530;
6 Ala. 735; 3 Conn. 250; 2 J. J. Mar. 380; 15 Barb. 560.

4. The court erred in permitting the plaintiff to erase
the name of Robinson from the bond, and to substitute
the name of Masterson in its stead.  This effected a mate-
rial alteration of the bond, which rendered it void as to the
other surety; and the rights of the obligee cannot be thus
impaired or destroyed, against his consent.  A new bond
ought to have been executed and tendered.

5. The record of the suit of *Wiley* against *Kelly* was not
relevant to any issue in the case, while it contained evi-
dence which was calculated to injure the defendant before
the jury.

6. The charge asked and refused, ought to have been
given. It was proved, that plaintiff permitted the slave to
retain and dispose of a part of his earnings as he pleased,
knew that he had money, and authorized Landermilk to
borrow money from him; and that the money so borrowed
by Landermilk was used in the purchase by Williams.  On
these facts, he had no right to reclaim the money.—*Shank-
lin v. Johnson*, 9 Ala. 270; *Jones v. Nirdlinger*, 20 Ala. 490;
28 Ala. 520.  If he had the right, at his election, to rescind
the contract, and recover the slave, he ought first to have
returned the money advanced by the defendant.—13 Bar-
bour, 645; 2 Hill, 288; 1 Denio, 74; 1 Metcalf, 550.

Webb v. Kelly.

F. S. BLOUNT and G. Y. OVERALL, *contra.*—1. The act of 1858, to compel the personal attendance of witnesses, has no application to persons who are in jail under sentence of the law; nor had the defendant complied with its requisition, to procure the attendance of the witness. If he was injured by the refusal of the court to suppress the deposition, he might have examined the witness orally, as the court gave him permission to do.

2. The answer of the witness Lebonte to the fourth interrogatory contained some legal evidence, while the objection to it was general.—*Bigelow v. Ward,* 29 Ala. 471; Shepherd's Digest, 596, and authorities there cited.

3. The declarations of the plaintiff were admissible, as a part of the *res gestœ;* and even if there was error in their admission, the error worked no injury, since the evidence could not have affected the issue before the jury.

4. The plaintiff had a right to examine Robinson as a witness, and to substitute a new surety in his stead.— 5 Sm. & Mar. 238; 3 Cowen, 251; 3 Wendell, 376; 8 Johns. 308.

5. It was certainly competent for the plaintiff to explain the receipt which the defendant had read in evidence, and to show that the defendant himself had treated the money, therein mentioned, as belonging to Clarissa; and the record was admissible evidence for that purpose.

6. If the money paid by Brooks to Kelly, or any part of it, was furnished by the slave, and that fact was not known at the time by Kelly, the sale was a nullity, and Kelly's title to the slave was never divested. So long as the money remained in the possession of the slave, or was held in trust for him, the master had a right to reclaim it.—9 Ala. 271; 20 Ala. 490; 28 Ala. 514. The sale was void, for fraud, and for want of consideration.—15 Mass. 156; 10 N. H. 477; 14 Barbour, 594; Cro. Eliz. 199; 1 Bing. N. C. 534; 6 N. H. 225; Chitty on Contracts, 589.

STONE, J.—In the answer of the witness Mary Lebonte to the 4th interrogatory, are some statements of fact, which

are clearly legal evidence. The objection of the appellant was general, to the whole answer. Under these circumstances, the court did not err in overruling the objection. Shep. Dig. 596, § 169.

[2.] In admitting, as evidence for plaintiff, what he had himself said a few days after the sale, the city court erred. This was no part of the *res gestæ*, and Mr. Kelly could not make evidence for himself.—Shep. Dig. 592 ; *Newcombe v. Leavitt*, 22 Ala. 631.

[3.] We do not know any principle on which the record of the suit between Wiley and Kelly could be evidence for any legitimate purpose in this trial. It was irrelevant, and could not possibly shed any light on the main subject of contest, namely, whose money was used in the purchase of the slave Wash? The court erred in admitting the record.

[4.] The question of the duty of the city court to suppress the deposition of the witness Mary Lebonte, and to bring her personally before the court, will probably not again arise in its present form. It is probably true that a witness, confined in prison under sentence of the law, is not within the spirit of the statute; but, when the proper affidavit is made, and the attendance of the witness can be procured, the deposition should be suppressed.—Acts 1857–8, p. 34.

[5.] In the form in which the attempt was made to render Mr. Robinson a competent witness for Mr. Kelly, the city court also erred. It was not permissible to erase Mr. Robinson's name from the bond, and supply his place with another surety. A new and sufficient bond should have been executed and approved, before any action of the court should have been had, exonerating Robinson as a surety. Tendering such good and sufficient surety, and executing a proper bond, Mr. Kelly had a right to ask that his former surety be discharged, that he might testify as a witness for him.—*Taylor v. Branch Bank at Huntsville*, 14 Ala. 633; *Drinkwater v. Holliday*, 11 Ala. 134.

[6.] We think the charge asked and refused, misappre-

tiends the rights of the parties to this suit. The gist of Mr. Kelly's complaint lies in the claim by him, that the pretended purchase of Wash by Mr. Williams and Mr. Webb, was with money to which neither of them had any claim, but which belonged to him, Kelly; that a fraud was practiced upon him, and his title to his property sought to be divested, by a pretended purchase by Williams, when in fact the purchase was made by the slave Wash himself, with the money of his master.

The rule is well settled in this State, that a slave cannot be the owner of property, but whatever accrues to the slave becomes the property of his master.—See *Brandon v. Bank of Huntsville*, 1 Stew. 320; *Jones v. Nirdlinger*, 20 Ala. 488. If the slave acquire money or property with his master's consent, and with like permission pay it out to another, who receives it fairly and in a business transaction, the owner of the slave cannot afterwards pursue such money and recover it.—*Shanklin v. Johnson*, 9 Ala. Rep. 271; *Stanley v. Nelson*, 28 Ala. 514. But, to come within this rule, the person who receives the money or property from the slave, must receive it in his own right, and not as a bailee or custodian for the benefit of the slave. If the money or other thing be received and held for the slave, it is still subject to the master's assertion of ownership.

The fact that Wash "loaned the money thus acquired to Landermilk, and it [the money] was used by Williams in the purchase of Wash," did not, without more, destroy Mr. Kelly's right to the money. It would still be subject to his assertion of ownership, so long as it was held for Wash's benefit; and if the purchase was in fact made with money furnished by the slave, without the knowledge of Mr. Kelly, and this change of title was procured to be made to Williams, but, in reality, was for the benefit of the slave himself,—then, on the ascertainment of these facts by the jury, Mr. Kelly would have the right to retake the possession of his slave.

Reversed and remanded.