# BROADHEAD vs. JONES.

[ACTION ON PROMISSORY NOTE, BY ASSIGNEE AGAINST MAKER.]

1. *Competency of maker of promissory note, or distributee of his estate, as witness for co-maker.*—In an action against one of the joint makers of a promissory note, a distributee of the estate of a deceased co-maker, who was not sued, is a competent witness (Code, § 2302) for the defendant.

2. *Validity of note given for money loaned by slave.*—A promissory note, given for money borrowed from a slave without the written consent of the master, is void, and will not support an action; but, if the money was derived from the slave's earnings, and was loaned by him without the knowledge or consent of the master, it might be recov_ered by the master in an action for money had and received; yet, if the money was loaned by a bailee, with whom it had been deposited by the slave, and a promissory note taken payable to such bailee, the master cannot, as the equitable or beneficial owner, (Code, § 2129,) maintain an action on the note, because no fiduciary relation existed between him and such bailee.

3. *Set-off against such note.*—In an action on a promissory note given for money borrowed from a slave, and made payable to the bailee with whom the slave had deposited the money, a debt due from the slave to one of the makers, who is not sued, is not available as a set-off against the assignee.

4. *Plea denying plaintiff's ownership of note.*—In an action on a promissory note, a sworn plea is necessary to put the plaintiff to the proof of his ownership; and if such plea is not sworn to, it should be struck from the files on motion.

APPEAL from the Circuit Court of Bibb.
Tried before the Hon. PORTER KING.

THIS action was brought by Hugh Jones, against Michael K. Broadhead and William Dunlap; was founded on a promissory note for two hundred and twenty dollars, executed by the defendants jointly, dated the 23d April, 1854, and payable the 1st January, 1855, to D. E. Davis, or bearer; and was commenced on the 24th August, 1857. The defendant Dunlap died pending the suit, and the action was abated as to him. The defendant Broadhead pleaded, "1st, *non assumpsit;* 2d, payment; 3d, set-off; 4th,

that the note sued on is not the property of the plaintiff; 5th, that the plaintiff is not the party really interested in said note; 6th, that said note was [given] for the services of a negro man, named Dick, who, while he was rendering the services for which said note was given, was permitted by the plaintiff, who had the legal title to said slave, to go at large, and hire himself out, contrary to the statute, &c.;" and issue was joined on all these pleas.

On the trial, as the bill of exceptions shows, after the plaintiff had read in evidence the note on which the suit was founded, the defendant introduced one Woolley as a witness, who testified, "that he was well acquainted with a slave named Dick Herrington, commonly known as 'Free Dick;' that said slave had belonged to John Herrington, who died in said county in 1850, or 1851; that said slave, since the death of said Herrington, had gone at large, hired himself out, made his own contracts, and received the money that he earned by his labor; that he made Maplesville, in said county, his headquarters, and stayed about there, employing his time as he pleased; that he followed ditching for a considerable portion of the time, and made a good deal of money in that way; that he also had a shoe shop in Maplesville during a part of the time, and had hands employed under him in making shoes, which he sold to the community at large; that he also had a shop in said town, where he sold candy, cheese, tobacco, &c.; that he also purchased and owned, during that time, two negro boys; that said David E. Davis, the payee of said note, also lived in said town during a part of said time, and, at and after the date of the note sued on, acted as a sort of agent or guardian for said Dick in the transaction of his business; that he kept Dick's papers for him, and had a little wooden box, known as 'Dick's box,' in which he kept all of Dick's papers; that he (witness) saw the note sued on in said box a short time before the death of said D. E. Davis, and also, according to his best recollection, after the death of said Davis; and that said Dick, during all the aforesaid period, was generally reputed and recognized as a free man in the community where he lived."

The defendant then introduced one Forshee as a witness,

whose testimony, as to the *status*, &c. of Dick, was the same as that of the witness Woolley, and who also testified, "that said D. E. Davis died in May, 1856 ; that said Davis, for several years before his death, acted as agent or guardian for said Dick, and had a wooden box in which he kept Dick's papers; that he (witness) had heard said Davis say that the papers in that box belonged to Dick; that he saw the note sued on in said box, both before the death of said Davis, and three or four days after his death; that he was the administrator of the estate of said Davis, and did not claim said note as the property of said estate ; that he consulted with the witness Woolley, as to what should be done with the papers in said box, and the note was afterwards delivered up to Dick; that he afterwards saw said note in the possession of Dick, who offered to trade it to him, but witness declined to take it until he could see William Dunlap, one of the makers ; that he afterwards saw said Dunlap, and that Dunlap told him that the note was given for money borrowed from said Dick, that he had paid it, and that Dick was then owing him a balance." The defendant then introduced as a witness one James Dunlap, who was a brother of said William Dunlap, and who testified, in addition to the facts above stated as to the *status*, &c., of Dick, that Dick was indebted to said William Dunlap, at the time of the death of the latter, in the sum of about one hundred and fifty dollars, for the board of his hands, the price of a rifle sold to him by said William Dunlap, and other items. "In order to show the assent of the person legally authorized to give it, to the use of said claims as a set-off against the plaintiff's demand in this case, the defendant read in evidence letters of administration on the estate of said William Dunlap, which were duly granted to him, by the probate court of said county of Bibb, on the 9th April, 1860. After the evidence on both sides was closed, the *defendant* (?) moved the court to exclude from the jury all the evidence of said James Dunlap tending to show an indebtedness on the part of said Dick to said William Dunlap, as above set out. The court sustained the objection, and excluded the evidence ; to which ruling of the court the defendant excepted."

Broadhead v. Jones.

"The defendant offered as a witness one D. E. Dunlap, who, being examined on his *voir dire*, stated, that he was a brother of said William Dunlap, who died intestate, having never been married, and whose brothers and sisters were his heirs. The court thereupon sustained the plaintiff's objection to the competency of said James Dunlap as a witness, and excluded him; to which ruling the defendant excepted."

"The above being all the evidence in the case, the court thereupon charged the jury, that, if the boy Dick was a slave, and was allowed by his owner to go at large, and to hire himself out, this would be in violation of the law, and the owner could not recover for his services or wages while thus going at large; but that, if Dick collected the money for his wages, then the money so collected belonged to his owner; and if he (said Dick) then loaned it out, and took a note for it, his owner could recover on such note in this action.

"The court charged the jury, also, that if said Dick was a slave, and was permitted by his owner to go at large, and to hire himself out, and to receive the proceeds of his labor, then the money so received by him would be the property of his owner; and if the note sued on was given for money thus · earned, [and] said note belonged to the plaintiff, then he was entitled to recover in this action.

"The defendant excepted to each of these charges, and then requested the court to instruct the jury—

"1. That if they believed, from the evidence, that the boy Dick was a slave, and was permitted by his owner to go at large, and to hire himself out; and that he earned money while so doing; and that the money for which the note sued on was given, was part of such money,—then the plaintiff could not recover in this action.

"2. That if they believed, from the evidence, that the boy Dick was permitted to go at large, and to hire himself out; and that, while so doing, he earned the money for which the note sued on was given; [and] that there was not sufficient evidence before them to satisfy them that the plaintiff was the owner of said Dick,—then the plaintiff could not recover in this action.

" 3. That if there was not evidence before them to satisfy their minds that the plaintiff was the owner of the boy Dick when said money was earned, or when said note was given, or since that time, then the plaintiff could not recover in this action.

" 4. That if no evidence was offered to show that the plaintiff was at any time the owner of the boy Dick, the plaintiff could not recover in this action.

" 5. That if they believed, from the evidence, that the note sued on was given for money earned by Dick while going at large and hiring himself out, being made payable to David E. Davis, who acted as his agent or next friend, and was in the possession of said Davis at the time of his death ; and that Dick obtained the possession of said note after the death of said Davis, then the burden of proof was on the plaintiff, to show how he acquired the possession of the note ; and if there was no satisfactory evidence before them on this point, that they should find for the defendant.

" 6. That if they believed, from the evidence, that the note sued on was given for money loaned, which was earned by Dick while going at large and hiring himself out; and that. said money went into the hands of said Davis, who was acting as guardian or agent for said Dick; and that said Davis, acting for and in behalf of Dick, and while said Dick was still permitted to go at large, loaned out said money, as Dick's money,—then, if they further believed that the plaintiff knew and connived at said Dick's going at large and hiring himself out as aforesaid, and asserted no title to said note, and gave [no] notice that either Dick or said note belonged to him, the plaintiff could not recover in this action.

" 7. That if they believed, from the evidence, that for several years, both before and after the death of said David E. Davis, the boy Dick went at large, and hired himself out, with the knowledge and permission of the plaintiff; and that the money for which said note was given, was earned by the labor of said Dick, while thus permitted to go at large, and was loaned out, in the course of his business, as his money, the plaintiff in no way interfering, the plaintiff could not recover in this case.

" 8. That if they believed, from the evidence, that the note sued on went into the possession of Dick after the death of said Davis, and their minds were not satisfied, from the evidence, that Dick belonged to the plaintiff, then the burden of proof was on the plaintiff, to show how he received the note; and that if there was no evidence to satisfy their minds, as to how he acquired the note, they must find for the defendant.

" 9. That if they believed all the evidence, it would be their duty to find a verdict for the defendant."

The court refused each of these charges, and the defendant excepted; and he now assigns as error all the rulings of the court, to which, as above stated, he reserved exceptions.

GOLDTHWAITE, RICE & SEMPLE, for appellant.

BYRD & MORGAN, and J. R. JOHN, *contra.*

A. J. WALKER, C. J.—[1.] In rejecting D. E. Dunlap, as an incompetent witness for the defendant, the court below brought itself in conflict with the decision in *Rupert & Cassity v. Elston*, (35 Ala. 79,) and committed an error for which its judgment must be reversed.

The charges given, and the charges asked and refused, involve several material questions; and we proceed to adjudicate those questions so far as may be necessary to guide the court below on a future trial.

[2.] Sections 3283 and 3284 of the Code pertain to the offense of supplying liquor to a slave. The next section prescribes a punishment for buying or receiving from a slave " any other article or commodity, of any kind or description, without the consent of the master, owner, or overseer of such slave, verbally or in writing, expressing the articles permitted to be sold to, or bought or received from such slave." Under this law, it would be an indictable offense to receive money on loan from a slave, in person, or through the known representation of another, without the consent of the master, owner, or overseer, expressing that the money was permitted to be loaned.—*Stanley v. Nelson,* 28 Ala. 514. Therefore, if the note in this case was given for money so loaned, the consideration is illegal, and the

note void. It is a question which occurs to us, whether the loan of money by a slave would not be inconsistent with his *status*, and with the public policy and law controlling it; and whether, therefore, any contract in consideration of such loan would not be illegal and void, even though made with the master's consent.—*Love v. Brindle*, 7 Jones' Law, (N. C.) 560; *White v. Cline*, *ib.* 374. But we think the decision of this question will not be necessary in this case, and we pretermit any consideration of it.

A slave's earnings, or acquisitions, belong to the master. The money, for the loan of which the note in this case was given, if the product of the slave's earnings, would belong to the master, who could recover it in an action for money had and received.—*Webb v. Kelly*, 37 Ala. 333; *Sterrett's Executor v. Kaster*, 37 Ala. 366; *Jones v. Nirdlinger*, 20 Ala. 488; *Shanklin v. Johnson*, 9 Ala. 271. The suit here, however, is not for the recovery of the money, but upon the note given by the borrower for the loan of it. This note, as we have already seen, is void, if the money was loaned by the slave. If, however, the payee of the note, Davis, having the money in his possession, loaned it out on his own account, and not for the slave, and took the note payable to himself, the case is presented of one man's converting to his use the money of another, and taking a note for the loan of it payable to himself. If that should be the case presented on a future trial, the question will arise, whether a constructive trust in favor of the master, who was the owner of the money, attached to the note given to the payee in consideration of the tortious loan of the money. If such a trust arose, the master of the slave would be the equitable owner of the note, and he, or his representative, might maintain an action on it, under the authority of section 2129 of the Code. But no such trust would arise in the case above stated. Where one occupying some fiduciary relation to the owner of money converts it into something else, the law implies a trust in favor of the owner of the money at his election; but this doctrine does not apply, unless some fiduciary relation existed. 1 Lead. Cases in Eq. (Hare & W.'s notes,) 277; 2 Fonb. Eq. (top) 423, (marg.) 118 *n.*; *U. S. v. Hand*,

2 Wash. Cir. C. R. 435–445; 2 Story's Eq. Jur. § § 1258, 1259, 1260, 1261; *Taylor v. Plumer*, 3 M. & S. 574; *Getman v. Getman*, 1 Barb. Ch. R. 499–514; *Campbell v. Drake*, 4 Iredell's Eq. 94; *Thompson v. Perkins*, 3 Mason, 235; *Wallace v. Duffield*, 2 S. & R. 521; *Union Bank v. Baker*, 8 Hump. 447.

It has been decided in Tennessee, that one who loans out money deposited by a slave with him, and takes a note payable to himself, may sue in his own name and recover upon it.—*Jenkins v. Brown*, 6 Humph. 299.

[3.] The matters of account against Dick, his *status* as a slave being established, were incompetent as evidence for any purpose which we can perceive. They certainly would not constitute a valid set-off in this case.

[4.] Under our rule of practice, the *onus* of proving the beneficial ownership of a note is not cast upon the plaintiff, without a sworn plea.—*Ala. & Miss. R. R. Co. v. Sanford & Reid*, 36 Ala. 703. The plea in this case, which contests the plaintiff's ownership of the note, must be stricken out, on motion, unless it is sworn to.

Reversed and remanded.