## JONES' ADM'R vs. SHADDOCK.

[BILL IN EQUITY TO ENFORCE PAROL TRUST IN SLAVES.]

1. *Parol voluntary trust in slaves enforced against purchaser with notice.*— Where slaves are conveyed by a father to his reputed daughter, in consideration of natural love and affection, by deed of gift absolute on its face, but under a parol trust that the grantee shall, within a specified time, convey them to her children, the trust may be enforced in equity, at the instance of the children, after the death of the grantor, against one who purchased from the grantee with notice of the' trust.

2. *Liability of such implied trustee.*—The purchaser in such case, if he allows the slaves to hire their own time, and acquire money or property for themselves, is not bound to assert title to such acquisitions; yet, if he does assert title thereto, he holds such acquisitions for the benefit of the *cestuis que trust,* and is chargeable with the same at their instance.

3. *Same.*—If he sells a negro to one of the slaves held by him under such trust, and receives in payment money arising from the slave's earnings, the title to the negro so sold does not thereby pass from him, but he holds the money subject to the trust.

APPEAL from the Chancery Court of Bibb.

Heard before the Hon. JOSEPH R. JOHN.

THE bill in this case was filed, on the 19th November, 1859, by the five youngest children of Martha Shaddock, (now Martha Carey, the wife of William Carey,) against the said Martha and William Carey, and one Hugh Jones; and sought to enforce a parol trust in three slaves, to-wit, Dick, Turner, and Wash, and to charge the defendant Jones with the value and hire of said slaves. The slave Dick, with other slaves, was conveyed to the said Martha Shaddock, by deed of gift dated the 30th March, 1852, in consideration of natural love and affection, by John Herndon,

who was the reputed father of said Martha, and who died before the bill in this case was filed. The bill alleged, that this conveyance was made in trust for the use and benefit of the complainants, and on the express promise of the said Martha to convey said slaves to them within one month from that time. On the 13th April, 1852, said slave was sold and conveyed by Martha Shaddock, to said Hugh Jones; and the bill alleged, that Jones, at the time of his purchase, had notice of the trust under which said Martha held the slave. The slave was allowed by Jones to go at large, and act as a freeman; and the bill alleged, that, by his earnings and acquisitions, he bought and paid for two other slaves, Turner and Wash, and had the bills of sale for them taken in the name of said Jones. In October, 1857, Jones sold and conveyed the three slaves to one F. M. Thomason, by whom they were carried out of the county. The bill prayed, that an account might be taken of the value of the slaves at the time they were sold by Jones, and of their hire and earnings while in his possession, and for a money decree against him for the amount so ascertained; and the general prayer was added.

The defendant Jones, in his answer, denied all knowledge of the alleged trust at the time he purchased the slave Dick; but asserted that he was told by said Martha Shaddock, before and at the time of his purchase, that she held the slave under an absolute deed of gift from John Herndon, but had promised Herndon that, so soon as the slave paid her eight hundred dollars, she would emancipate him; and that he bought the slave from her at the slave's own request, and with the intention to emancipate him so soon as he had paid for himself. He admitted, that Dick had bought and paid for the boy Turner, and had also paid him five hundred dollars for Wash, who belonged to him; and that he held the legal title to both Turner and Wash, until he conveyed them to said Thomason. He averred, that he had intended in good faith to emancipate Dick, had allowed him to go at large and act as a freeman, and had filed a petition in the probate court for the purpose of emancipating him; that Martha Shaddock having afterward instituted an action at law against him for said slave, he

transferred all his interest in the slaves to Thomason, in order to rid himself of all further trouble about them, taking from Thomason an obligation to indemnify him against all costs and damages in said suit; and that he had no knowledge or notice whatever of the complainants' alleged interest in the slaves, until after the bill was filed. He also demurred to the bill, for want of equity, and on account of the staleness of the demand; and pleaded the statute of frauds, and the statute of limitations.

The bill prayed process of subpœna against Carey and wife; but the record does not show that any process was ever issued against them, or that they ever appeared, or that any decree was rendered against them.

The complainants took the depositions of F. M. Eiland, who wrote the deed of gift from Herndon to Martha Shaddock, and of J. W. Foshee, who was the attesting witness. Both of these witnesses proved the parol trust under which Martha Shaddock received the slaves, as alleged in the bill; and Eiland further testified, that he communicated all the facts, a few days afterwards, to the defendant Jones.

The demurrer to the bill was argued before Chancellor CLARK, and by him overruled. On final hearing, on pleadings and proof, Chancellor JOHN rendered a decree for the complainants, and directed the master to state an account, charging the defendant Jones with the value of the slaves Dick and Turner, and with their earnings while they were in his possession. The defendant Jones died before the account was stated by the master, and the suit was revived against his administrator. The appeal is sued out by the administrator, and the final decree is assigned as error.

JOHN T. MORGAN, for the appellant.—So far as the complainants are concerned, the parol trust under which Martha Shaddock received the slaves, if it be sufficiently proved, is voluntary, and executory; and a court of equity will not enforce it at their instance.—*Kinnebrew v. Kinnebrew,* 35 Ala. 628; *Crompton v. Vasser,* 19 Ala. 264; Lewin on Trusts, 177; 2 Roper on Legacies, 1787.

J. R. JOHN, *contra.*—1. The trust was fully created and

executed, and will be enforced in equity, not only against the trustee, but against a purchaser with notice.—*Bishop's Heirs v. Bishop's Adm'rs*, 13 Ala. 483; Story's Equity, §§ 973, 977; *Crompton v. Vasser*, 19 Ala. 264.

2. If the slave Dick was subject to the trust, in the hands of the defendant Jones, his earnings and acquisitions are also subject to it.—*Brandon v. Huntsville Bank*, 1 Stewart, 337; *Shanklin v. Johnson*, 9 Ala. 274; *Jenkins v. Brown*, 6 Humph. 301; *Graham v. Strader*, 5 B. Monroe, 186.

A. J. WALKER, C. J.—There can be no doubt, that the conveyance by John Herndon to Martha Shaddock was upon a valid trust, and that Hugh Jones took the title to the slave Dick with full knowledge of that trust. This trust was properly enforced against Jones.—*Bishop v. Bishop*, 13 Ala. 475. Jones, having converted Dick to his use, in violation of the trust, was chargeable as a trustee in reference to such slave; and his administrator was also chargeable with the hire of the slave, from the date of the conveyance to said Jones.

[2.] We have had more difficulty with the question as to the other two slaves, Wash and Turner. Dick, being permitted to go at large, and act as a freeman, acquired money with which to purchase these slaves, Wash and Turner. He purchased and paid for Turner, and took a title in the name of the defendant's intestate, who held the title also to Dick. He purchased Wash, at the price of five hundred dollars, from the defendant's intestate, and paid for him; but a bill of sale was not made. The acquisitions of slaves, even though made with the owner's consent, belong to their owners, who may assert their rights thereto; but the owners can not assert their claims to such acquisitions after they have been disposed of by the slaves, and passed from such slaves.—*Shanklin v. Johnson*, 9 Ala. 271; *Devaughn v. Heath*, 37 Ala. 595; *Webb v. Kelly*, 37 Ala. 333; *Martin v. Reed*, 37 Ala. 198; *Stanley v. Nelson*, 28 Ala. 514; *Carmille v. Carmille*, 2 McMullan, 454; *Broadhead v. Jones*, 39 Ala. 96. The owner may, or may not, at his option, assert his title to his slave's acquisitions. We are not prepared to

18

hold, that a trustee is bound to exact for his *cestui que trust* the acquisitions of a slave, which slave is the subject of the trust. We do not think that Jones, the defendant's intestate, was bound to appropriate the acquisitions of the slave Dick to the benefit of the trust, or was liable for neglecting to do so. We would not decide that the mere neglect to assert a title to Turner would, of itself, be a ground of liability in the trustee. We think the trustee could exempt himself from accountability for Dick's acquisitions, by forbearing to assert any ownership over them.

Jones, the defendant's intestate, did not, until he sold the slaves, assert any title to the earnings of Dick, or title to Turner, who was bought by Dick, or to Turner's earnings. We decide, that the court erred in charging the defendant on account of the earnings of any of the slaves, not claimed by him.

While we decide that the involuntary trustee was not bound to claim for the trust the earnings of the slaves, yet he could claim them, and, if he did so, his claim must be held to be for the benefit of the trust. A trustee could not take any property, by virtue of a title which the law deems to be in him as trustee, except for the benefit of the trust. In 1857, Jones, the trustee, asserted his title to Dick and Turner, the latter being a slave bought by Dick. He not only asserted his title to them, but transferred them to one Thomason, for a consideration specified in the pleadings. His duty as trustee was to hold the slaves, after he asserted his title, for the benefit of the trust. In not doing so, and in transferring the slaves to be carried out of the county, he was guilty of a wrongful conversion, as against the *cestuis que trust*, and is chargeable with the value of these slaves at that time.

[3.] The slave Wash belonged to Jones. Dick paid Jones five hundred dollars for this slave. We concur with the chancellor in the opinion, that the title to Wash did not pass out of Jones by this transaction. The point seems to be so decided in the case of *Webb v. Kelly*, 37 Ala. 333. But the five hundred dollars, the fruit of Dick's earnings, received by Jones, must be clothed with the same trust as was the slave Dick. The trustee could not receive the

earnings of the slave, freed from the trust.   We think the chancellor correctly held the defendant liable for the five hundred dollars received by Jones from Dick, and refused to make him liable for the value of Wash.

The chancellor ought to have rendered a decree to the effect following : that an account should be taken, charging the defendant—1st, with the reasonable annual hire of the slave Dick, from the date of the purchase by the defendant's intestate, to the sale by him, and also with interest on such annual hire ; 2d, with the value of the slaves Dick and Turner, at the time of the sale of them by defendant's intestate, and interest on such value ; 3d, with the sum of five hundred dollars, and interest thereon, from the time of its payment by Dick to defendant's intestate.   We deem it prudent not to render a decree ourselves, because the defendant Jones died after the decree in the court below, and it may be that the condition of his estate may require some special order.

Reversed and remanded.

BYRD, J., not sitting.