STEPHEN P. LANE, in equity, *vs.* MARY F. S. LANE and others.

York.    Opinion November 19, 1888.

*Trust.  Husband and wife.  Equity.*

A grantor conveyed real estate to a person who immediately conveyed the same to the first grantor's wife. It was one transaction, and no consideration passed from either grantee. Several years afterwards the wife wrote her husband substantially this: "The land I intend to take care of myself. I told you at first you could have it back, but I changed my mind, and shall sign no more deeds."

*Held*: That these words, as between husband and wife, do not furnish sufficient evidence of an express trust.

*Held*, further, that a trust is not implied by the transaction; because no consideration was paid by the husband for a conveyance to his wife; and, further, because, if there had been such consideration, the presumption would be, that the husband intended the conveyances as a gift to his wife; and the evidence does not overcome this presumption.

A complainant cannot recover money by a bill in equity, which he failed to recover in an action at law, where the law, as well as equity has jurisdiction of the claim.

Where a wife, during the marital relation, purchases railroad stocks in her own name, with her husband's money, acting as his agent, he may, after they have been divorced from each other, recover the stocks, or their value, from her by equitable remedy.

ON report.

Bill in equity.

The opinion sufficiently states the facts.

*Edward P. Payson and Wm. M. Payson, and C. W. Goddard*, for the plaintiff, contended that the case showed :

1st.   An express trust created by parol and proved by "some writing." "Some writing" means any writing however informal from which the existence of the trust in the estate and the terms of it can be sufficiently understood, whether it was intended by the signer as such or not." *McClellan* v. *McClellan*, 65 Maine,

500; Pomeroy on Equity, § 1006–1007, and notes. It may be a subsequent writing. *Ibidem.*

Trust may be incidentally recognized or admitted in a letter. *Kingsbury* v. *Burnside*, 58 Ill. 310, in which the whole subject is very thoroughly considered. And see *Johnson* v. *Ronalds*, *Adm.* 4 Munf. 77; 57 N. H. 43.

2nd. A resulting trust. The law is established, that when the legal title is taken in the name of one person and the consideration is furnished by another, a trust results in favor of the latter. That the trust arises by operation of law and may be proved by parol evidence.

Defendant received the real estate by deed from M. D. L. Lane, the consideration of which was the conveyance of the same premises to M. D. L. Lane by plaintiff with a request accordingly. How a consideration is paid whether in money or bond, or any other thing of value, matters not. "It is sufficient that it (payment) was made in such manner as to induce him (the third party) to convey." *Dwinel* v. *Veazie*, 36 Maine, 512. Professional services are sufficient. 4 Nev. 280.

The presumption of advancement arising from the fact that the grantee was the wife of the party paying the consideration may always be, and has been here rebutted. The technical rule of law that a grantor shall not dispute his own deed is irrelevant.

Later decisions allow him to contradict the acknowledgment of consideration for all purposes except to raise a resulting trust. *Goodspeed* v. *Fuller*, 46 Maine, 141. An absolute deed may even be shown to be a mortgage. *Reed* v. *Reed*, 75 Maine, 264.

The court has said however, that any kind of consideration is sufficient. *Dwinel* v. *Veazie, supra.*

In 114 Mass. *Gould* v. *Lynde*, the point here presented was not raised, the court did not consider it all. In New York in a late case decided in 1882, upon facts very similar to this case, though not so strong the court found a trust and granted relief. *Bitter* v. *Jones*, 28 Hun. 492.

3rd. A constructive trust. Whenever a trustee or person clothed with a fiduciary character takes advantage of the relationship and thereby acquires the title or use of the trust

property, then a constructive trust is imposed upon the property. 2 Pomery Eq. § 1052; *Foote* v. *Foote*, 58 Barb. 258.

This principle is applied to all abuses of confidence whereby the one in whom the confidence is imposed, obtains an undue advantage. *Ibidem.*

If one party makes use of some confidential relation to obtain the legal title upon. more advantageous terms than he could otherwise have done, equity will convert such party into a trustee. Perry on Trusts, § 166.

Whenever two persons stand in such relation that while it continues confidence is necessarily reposed by one, and the confidence is abused to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not be impeached if no such confidential relationship had existed. *Tate* v. *Williamson*, *L. R.* 2 Ch. Ap. 61.

The court will not permit the grantee to retain the beneficial interest if there was *mala fides* on his part. Lewin on Trusts, 145, 180 and cases cited.

A conveyance to wife of the grantor on the understanding that she would hold for him and convey to anyone he should desire, or to him, raises a trust. *Bartlett* v. *Bartlett*, 15 Neb. 594.

Fraud vitiates all deeds. *Boegle* v. *Dents*, 55 Pa. 369, and see 6 Watts & S. (Pa.) 97; *Manning* v. *Hayden*, 5 Sawyer Cir. Ct. 360; *Harden* v. *Darwin*, 66 Ala. 55; *Willard* v. *Willard*, 56 Pa. 119.

Constructive trusts arise by operation of law and are not within Statute of Frauds. 2 Pom. Eq. 1008.

Parol evidence is admissible to show intent of parties to a deed and prove a constructive trust. *Hosford* v. *Merwin*, 5 Barb. 51. The fraud need not exist at the time of original conveyance. It may arise subsequently, whenever the trustee wrongfully refuses to perform the trust. In *Barrell* v. *Hanrick*, 42 Ala. 60, the court say "that in avoidance of a fraud parol evidence may be engrafted on an instrument that purports to be absolute on its face," notwithstanding the Statute of Frauds "for although

there is no fraud in the execution in the deed if it be afterward converted to a fraudulent purpose or one wholly different from the one intended by both parties at the time of its execution, equity ought to interpose." Where a person has parted with a valuable property upon the faith of a verbal contract, equity will not allow the other party to retain the property so obtained to consummate the fraud. The Statute of Frauds does not apply. *Traphagen* v. *Burt*, 67 N. Y. 35.

Parol agreement to reconvey on demand was admitted by defendant. Original conveyance was by deed reciting consideration paid but none was paid in fact. Held Statute of Frauds did not apply, and relief was granted. *Haigh* v. *Keye*, 41 L. J. Ch. 567.

Conveyance was upon parol agreement that defendant should reconvey if plaintiff was not convicted of bigamy. Defendant denied agreement and set up Statute of Frauds. Held Statute did not apply and relief was granted. 35 Beav. 208.

In these cases the fraud arose after the conveyance, the subsequent refusal to keep a prior parol agreement. See also *Rudkin* v. *Dohman*, 35 L. T. (N. S.) 791; *Booth* v. *Turle*, 1 Rep. 16 Eq. 182.

The testimony in the case at bar shows beyond question that defendant obtained the legal title to this property only by being the wife of the plaintiff. When therefore, she terminated that relationship without his consent, by reason of which only she obtained the property, she also terminated the trust that depended upon such relationship. A trust ceases with the purpose for which it was created. *Bellinger* v. *Shafer*, 2 Sand. Ch. 293.

The law is well settled that if a woman (or a man) being possessed of real or personal estate, and being about to marry makes a conveyance of such estate without the knowledge or consent of the other party to the marriage contract, before marriage, it is such a fraud upon his marital rights as equity will relieve against. *Leach* v. *Duval*, 8 Bush. (Ky.) 201; *Logan* v. *Simmins*, 3 Tred. (N. C.) 487; *Tucker* v. *Andrews*, 13 Maine, 124; *King* v. *Cotton*, 2 P. Will. 357, 674.

Is it any less a fraud upon his marital rights first to obtain his property as his wife on the understanding that the relationship will continue and then desert him and still retain the property?

The evidence also shows an absolute promise on her part to reconvey the premises, and so much confidential relationship coupled with a promise to reconvey. *Wood* v. *Rabe*, 96 N. Y. 414. A constructive trust is raised whenever the conveyance was obtained under a promise to convey to a designated person or to reconvey to the grantor. 2 Pom. Eq. and cases *supra*.

In *Stone* v. *Wood*, 85 Ill. 603, a wife received a deed from her husband under a promise to sell, pay his debts and return him the surplus. Instead she used it for her own private debts. The court granted relief; saying the husband would be estopped if he had intended vesting the title in her to hold as her sole and separate property, but he never intended such result and that when either party becomes untrue to his or her marital duties and by fraud obtains an unjust advantage over the other, equity will as readily afford relief as between other persons.

And finally without further specific authority than is found in a reasonable application of equitable principles to the marriage relationship, this court might well hold that the free right of contract and conveyance between husband and wife, coupled with a facility of divorce, such as existed under the civil law, require a proportional exercise of these principles, lest equity become incompetent to keep pace with society, and fail to adjust itself to new phases of "fraud, accident and mistake."

*Wilbur F. Lunt*, for the defendant, cited: *Smith* v. *M'Iver*, 9 Wheat. 532; *Hendrickson* v. *Hinkley*, 5 McLean, 211; *Cowan* v. *Wheeler*, 25 Maine, 273; *Alsny* v. *Daniels*, 4 Atl. Rep. 755; *Kurtz* v. *Carr*, (Ind.) 5 N. East. Rep. 692; *Radford* v. *Folsom*, 3 Fed. Rep. 199; *Bachelder* v. *Bean*, 76 Maine, 375; *Brooks* v. *O'hara*, 8 Fed. Rep. 529; Rev. Stats. c. § 11; *Edgerly* v. *Edgerly*, 112 Mass. 175; *Comerais* v. *Wesselhoeft*, 114 Mass. 550; *Titcomb* v. *Morrill*, 10 Allen, 15; *Gould* v. *Lynde*, 114 Mass. 366; *Dickenson* v. *Davis*, 43 N. H. 647; 2 Pom. Eq. § 1041; *Osborn* v. *Osborn*, 29 N. J. Eq.

385; 1 Howard, 189, 168; 8 Howard, 210; See also 2 Abbott's No. 1 Digest, 391; *Jouzan* v. *Toulmin*, 9 Ala. 662; *Pickering* v. *Pickering*, 38 N. II. 400; *Stevens* v. *Stevens*, 70 Maine, 92; 1 Perry on Trusts, 191–192; *Chesterfield* v. *Jansen*, 2 Ves. 155; *Gale* v. *Gale*, 19 Barb, 251; 1 Fonbl. Eq. B. L. C. 2, § 3, note R; *Blodgett* v. *Hildreth*, 103 Mass. 484; *Roddy* v. *Roddy*, 3 Neb. 96; *Burkley* v. *Lane*, 6 Buch. Ky. 587; Vol. 7 North East. Rep. 95; *Ahrend* v. *Odiorne*, 118 Mass. 261; *Tatge* v. *Tatge*, 25 N. W. Rep. 596; *Randall's Adm.* v. *Randall*, 9 Wis. 379; *Lickman* v. *Harding*, 65 Ill. 505; *Fitzgerald* v. *Fitzgerald*, 100 Ill. 386; *St. Patricks Catholic Church* v. *Dalet et al.* 4 North East. Rep. 241; *Falsken* v. *Harhendorf*, 7 N. W. Rep. 749; *Allen* v. *Withrow*, 3 U. S. Ct. Rep. 524; *Laughlin* v. *Mitchell*, 14 Fed. Rep. 382; *Merivitz* v. *Floring*, 2 North East. Rep. 529; *Ingham* v. *Burnell*, 2 Pac. Rep. 804; *Shafter* v. *Huntington*, 19 N. W. Rep. 11; *Bumpus* v. *Bumpus*, 19 N. W. Rep. 29.

PETERS, C. J. · The complainant was married to the principal defendant in 1841, they living together until 1870, and after that time separately until 1874, when she obtained a divorce. The complainant first knew of the divorce in 1880. In 1868, he conveyed to her, by means of a deed from himself to a brother who conveyed immediately to her, certain valuable real estate in Saco. She also got into her possession some thousands of dollars of his money, which came from his earnings and from debts due to him.

In 1882, he commenced against her an action of money had and received, to recover his money in her hands, including rents collected by her from the real estate. A referee, who heard the case, hesitating about what rules of law should govern their claims on each other, the case came to this court for instructions, as appears in *Lane* v. *Lane*. 76 Maine, 521. It was held, in that case, that the rents were not recoverable in an action of law, and that the value of specific articles of personal property of his, withheld by her from him, could not be recovered in that

form of action, but that his money in her hands could be; and that the same rules would govern which applied ordinarily to the relation of principal and agent, so far as related to his property remaining in her possession at the date of the divorce.

This bill was afterwards brought to obtain a reconveyance of the real estate, and personal property in her hands, and to recover the money. She died after the case was submitted to the court, and before a decision was rendered. By a subsequent agreement, made a part of the case, between the complainant and the administrator of the wife as well as with all her heirs, and the legatees and devisees in a will left by her, which is of doubtful validity, all these persons, none other being possibly interested, have come into court as parties, and submit the case anew on the evidence previously prepared, and the matters stated in their stipulation, and the complainant and all parties defendant ask that all questions may be finally settled, without any bill of revivor or of supplement or any additional pleadings. It is therefore desirable that all differences be thus judicially adjusted.

It is contended that the real estate was held by the wife on an express trust for the husband. We do not think an express trust is proved. There must be written evidence of it. The writing relied on is a letter which she wrote him in answer to communications from him. She says, in letter dated July 25, 1873, "Stephen: The deeds received. I shall sign the Virginia property for the reason you gave. The Saco property I intend to take care of myself, unless John wants it enough to pay me ten thousand dollars for it, cash down. I told you at first you could have it back, but, after learning what I did three years ago, I changed my mind, and now shall sign no more deeds, and do not wish to be troubled in this way again. If I am, I shall place myself in a position where I cannot be, and have my support. M. F. S. Lane."

The words of this letter might, perhaps, be regarded as a sufficient declaration of a trust, had the parties stood in the attitude of strangers to each other; combined with the fact that no pecuniary consideration was paid for the property by the

grantee. We think otherwise of it, as a communication to a husband from his wife. There may be no good reason why a stranger should hold as his own the real estate of another without paying a consideration for it, while there may be good reason why a wife should receive a title to her husband's property without any valuable consideration being paid therefor. A man is likely to give real estate to his wife or children, and not to strangers. There are strong moral and family considerations for the one act, and ordinarily no motive for the other. As between the husband and wife, the letter should not be construed as containing an admission that the property was his and not her own. They were not carrying on business transactions with each other. The letter expresses no obligation. Its tone is the reverse of it. It states no time when or terms under which she had said he might have the lands back. It gave no information of the circumstances which led him to convey to her. It was not at all inconsistent with her right to hold the property, as a gift to herself, that she had said at some time that he could have the property back. She was declaring what she would accord to him as a favor, not as a right. We do not understand that she meant, by using the expression "at first," that she made any promise at the time when the conveyance was made to her. That is not pretended. The fair inference would be that she had so said, at some date after the deed passed and prior to the date of writing the letter.

There are even less grounds for saying that an implied trust, as to the real estate, has been established by the evidence. The complainant, on this point, relies on the equitable principle that, in ordinary cases, where land is conveyed to one person and another pays the consideration, a resulting trust will be presumed in favor of the one paying the consideration. We think that principle is not applicable to the present facts. This was not a transaction of that kind. Here no consideration was paid to the person who conveyed to the wife. The transaction was in effect the same as if the deed had been made directly from husband to wife. The papers in the case disclose that the complainant conveyed to his brother by deed dated August 18, 1868, and the brother conveyed to complainant's wife by deed dated

August 19, 1868, but both deeds were acknowledged on August 19th, and were recorded at the same instant in the registry, on December 28, 1868. No money or other valuable consideration passed. The complainant was not a purchaser, nor his brother a seller. It was the husband's conveyance through the brother.

But the rule, invoked in behalf of complainant, does not apply for another reason. The presumption applies only when the transaction is between strangers, where there is neither legal nor moral obligation for the purchaser to pay the consideration for another. The rule is reversed in its application between husband and wife, and also between father and child. As between such parties, the presumption is, that the payment, by husband or father, for property conveyed to wife or child, is an advancement or gift. A man is not permitted to bestow property in this way to-day, and take it back to-morrow. If he makes his wife the owner, ordinarily he must abide by her ownership. This doctrine is declared in positive terms, and fortified by many authorities, by the author, in 2 Pom. Eq. Jur. § 1039 and notes. It is a doctrine too generally admitted to require argument in support of it.

No doubt, an implied trust may arise from a transaction where the consideration is paid by the husband, while the property is conveyed to the wife. But proof will be required to overcome the presumption the other way. The burden will be on the husband to prove such circumstances as will warrant such a result. *Stevens* v. *Stevens*, 70 Maine, 92. As bearing on the reason why the wife should or should not retain the property, the parties have testified very divergently. It is oath against oath. Better that some of the testimony should not be brought into the light. In any view, however, no stain can be cast upon the wife. Without going into details, our opinion is that the evidence, on collateral considerations, leaves the case as it finds the case, and that neither side makes any change in the effect which attaches to the ordinary presumptions. The case is much like that of *Edgerly* v. *Edgerly*, 112 Mass. 175, where the court said : "The only reasonable inference from all the facts proved is, that while the husband did not intend to make a gift of the property to his

wife which would deprive him of all benefit thereof, he did intend that the use of the estate, and the application of the income . . . should rest in her discretion." So here, the wife was in any view no more than a discretionary trustee, with the legal right to do with the property as she pleased, only that, under our statutes, she could not convey it in his lifetime without his joinder in her conveyance.

The complainant claims to recover money in the wife's hands at the date of her divorce. He cannot. That claim was foreclosed against him by a judgment against him in the action at law. He has been heard and had his day on that question. The law as well as equity had jurisdiction over that claim. *Bachelder* v. *Bean*, 76 Maine, 375.

This brings us to consider another claim presented by the complainant, wherein, on the evidence we arrive at the conclusion that he is justly entitled to recover. There can be no doubt, from the testimony outside that of the parties, as well as from their statements, that he passively allowed her to collect the bulk of his earnings, while he was a clerk and accountant, for many years; that she received a considerable sum of money due to him in notes; that in this way principally she received many thousand dollars in all; that the understanding between them was that any surplus, left unexpended for family support, should be invested in bonds or stocks for him as his property; that, with his general but not circumstantial knowledge, she made and changed such investments from time to time; and that some years before divorce, in this way she purchased with her husband's money, as his agent, twenty-eight shares of preferred stock in the Northern Pacific Railroad Company, and took the certificate of shares in her own name. The certificate stood in her name till her death in 1886. In her testimony, she very unwillingly confessed the transaction, and, as it was, the amount of the stock was not discovered until disclosed, after her death, by her will, a copy of which, by stipulation of parties, is made a part of the case. The complainant, searching in the dark for his properties in her hands, prays that his monies may be restored to him, or property, "if the money has been invested or changed in form."

The title to this stock has never before been claimed or contested, and we think the complainant is entitled to it, or its value.

We are not reluctant to reach this conclusion. There will be justice as well as equity in it. She died childless. Her estate goes from him and his heirs to strangers. She dispenses it in her will largely to her own brothers and sisters, who are, from aught that appears, able to provide for themselves. The complainant is old, and possessed apparently of but an insignificant estate. She lived upon means which came through him, having no other, until her death, leaving behind an estate probably not less than seven or eight thousand dollars. Once it was all his.

There is doubt if the divorce was a valid one. Neither side cares to question its validity, as it would be a two-edged sword in either's hands. We need not ourselves examine for defects, as it would work no practical difference in the end, if the divorce be void, only that such a discovery might necessitate new or supplemental proceedings. The controversies would be essentially, if not exactly, the same.

We think costs better not be allowed. And as it might complicate some of her bequests, which her heirs are desirous of making effectual, whether valid or not, it may be expedient, instead of requiring the administrator to transfer the shares specifically to the complainant, to assess against her estate the present proximate value of the shares in money. Their value may be estimated to be sixteen hundred dollars.

*Decree accordingly.*

WALTON, DANFORTH, VIRGIN, EMERY and HASKELL, JJ., concurred.