[Lide v. Park *et al.*]

# Lide *r*. Park *et al.*

### *Bill in Equity to enforce a Trust*

1. *Husband and wife; when husband holds property formerly belonging to wife free from trust.*—Where a husband in the foreclosure of a mortgage on land given to his wife, and while acting as her representative, with her knowledge, purchases said lands for the wife and takes a deed thereto in his own name, there is a breach by the husband and a repudiation by him and his wife of the statutory trusteeship existing between them, and if the husband continues to hold possession of the lands so purchased under a claim of right, title and ownership for ten years, he acquires a perfect title in law and equity free from any trust whatever.

2. *Same; same; when right of wife and those claiming under her accrues.*—Where a husband, when acting in behalf of his wife in the foreclosure of a mortgage given to her, commits a breach of trust by taking the title to the lands purchased at such sale for his wife in his own name, the right of the wife and those claiming under her to enforce the constructive trust in favor of the defendant thereby created, immediately accrues; and if the wife or those claiming under her wait nearly twenty year s before seeking to enforce such trust, their rights are barred by the lapse of time.

APPEAL from the City Court of Montgomery, in Equity.

Heard before the Hon. A. D. SAYRE.

The bill in this case was filed by the appellant, Frank W. Lide, against the appellees.

The case made by the bill is that in April, 1877, Alexander McDade owned and possessed the lands described and involved in this suit, consisting of about 1,220 acres. Said Alexander died in April, 1877. A few days previous to his death, he conveyed said lands to Janie McDade, his daughter, who was the half sister of complainant, Frank W. Lide, who, with her husband, were her only heirs.

At the time said McDade conveyed said lands to his said daughter Janie, there were three mortgages on the same executed by him, one to Charles McDade, on the 1st May, 1875, to secure a debt of $720.20; the second, on the 3d May, 1876, to his said daughter, Janie, to secure a debt of $1,125, and the 3d, to Limuel Park, of date 1st February, 1877, to secure a debt of $728. When the said McDade conveyed said lands to his said daughter, Janie, he delivered them to her and she went into possession, and continued in possession up to the date of her death, intestate and without issue, on the 28th day of May, 1878.

Not long after the death of her said father, the said Janie intermarried with Howard P. Park, who died in the month of March, 1897. Some time before his death, he intermarried with defendant, Ola Park, who now is, and has been since the death of her husband, the said Howard P., in the possession of said lands, claiming to own them.

Prior to the death of said Janie, in May, 1878, all of the mortgages, including the one to her, were foreclosed under the powers contained in them. The foreclosure sales were made under the direction, supervision and control of said Howard P. Park—Janie's said husband—and were made, as averred, for the purpose of getting the title, ownership and possession of said lands in himself; and, as is further averred, by arrangement between his brother, Robert E. Park, the latter purchased the lands at the foreclosure sales at the amounts of the principal and interest due on said mortgages, respectively; that said Robert E. paid no money whatever on said purchases; that said Howard P., in some way unknown, settled with said Limuel Park and Charles McDade—two of said mortgagees—before their sale under the mortgages, for the sums due on their respective mortgages, and after the foreclosure sales, each of the mortgagees named in said mortgages, and for the consideration expressed as due on the same, executed a deed to the said Robert E., who afterwards, without consideration, conveyed the same to said Howard P.; that no money was paid by him to the said Janie, and the only considera-

tion for her deed to him was his promise to afterwards convey the lands to her husband, the said Howard P., which he did, on the 11th October, 1878, which was after the death of said Janie. Each of the deeds from said mortgagees to said Robert E. Park, executed about the same time, were recorded in the probate court on the same day—the 20th January, 1879—and the one from Robert to Howard Park on the 4th January, 1886.

The bill further sets up in substance that on the death of Howard Park, in March, 1897, as the sole heir-at-law of the said Janie, the complainant became entitled to the said real estate, subject only to the lien therein in favor of the said Howard Park for the reimbursement of the sums expended by him for the payment of the purchase of said mortgage debts to said Limuel Park and Charles McDade, less the amount of the same which in equity should be borne by said life estate of said Howard Park in said lands, and less, also, whatever rents, income and profits the heirs or representatives of Howard Park have made or collected, or which, with due diligence, they should have made or collected out of said lands, since the death of Howard Park.

It is also further averred that in making said sales under said mortgages, or procuring them to be made, and procuring the said purchases under the said sales to be made by the said Robert Park, the said Howard Park acted as trustee of his said wife, Janie, whose trustee he in fact and law was, under the statutes of Alabama then in force, and in equity and goood conscience the estate of Howard Park and those who claim under him, can only claim to be reimbursed for the expenditures made by Howard Park in settlement by him of said mortgages to Limuel Park and Charles McDade, less the sum that should in equity be charged against the life estate of said Howard Park in said lands, etc.

The prayer of the bill is that the title acquired by Howard be divested out of those who claim under him, and invested in complainant as the sole heir-at-law of Janie, and this is coupled with an offer to compensate the estate of Howard for any sum expended by him in relieving his wife's estate of the mortgage liens.

The defendant moved to dismiss the bill for want of equity, and demurred, assigning many grounds, among them staleness of demand, *laches,* statute of limitations of ten years, and the lapse of more than twenty years between the purchase by Robert E. Park—on the 6th and 7th of March, 1878—and the filing of this bill, on the 13th May, 1898.

These objections the complainant seeks to escape on the grounds that Howard Park was an expressed trustee of said Janie, and, as such, purchased the lands through the medium of a collusive sale to Robert, and a subsequent conveyance by Robert to him; that during his lifetime—his death having occurred in March, 1897 —the statute of limitations did not run against the complainant, nor was he under any burden of diligence to protect his interest in said lands before that time.

On the submission of the cause upon the motion to dismiss the bill for the want of equity, and upon the demurrers, the court rendered a decree overruling the motion to dismiss, but sustained the demurrer to the bill. From the decree sustaining the demurrer to the bill the complainant appeals, and assigns the rendition thereof as error.

GORDON MACDONALD, JAMES WEATHERLY and O. C. MANER, for appellant.—Janie Park was the owner of the land subject to the mortgages, and the estate was her statutory separate estate, as to which he was express statutory trustee.—Code of 1876, §§ 2705, 2706, 2707; *DeBardeleben v. Stoudenmire,* 82 Ala. 574; *Lide v. Park,* 90 Ala. 246.

Being such trustee, he is held to the same good faith and discreet management of the trust property as other express trustees under like circumstances, except only as his rights and duties are modified by statute.—82 Ala. 580, *supra.* Hence it cannot be doubted that the husband's attempt, by means of the colorable foreclosure sales by collusion with his brother to divest the title to the property out of his wife and to vest it in himself, would be nugatory and void, and his trusteeship would continue as before, and the foreclosure sales and the sat-

[Lide v. Park *et al.*]

isfaction of the mortgage debts and mortgages, as well as the conveyances to Robert and the conveyance by Robert, would be conclusively presumed to have been for the benefit and behoof of the wife, in a court of equity. *McLeod v. Bishop*, 110 Ala. 645.

Her deed to Robert Park, being without consideration, and being really and in truth a deed to the husband, would be void.—Code of 1876, § 2709; 82 Ala. 580, *supra.*

Being an express trustee for his wife, and his possession and control of the trust property having continued after the foreclosure sales in the same manner as before, and especially as there was no repudiation or disavowal of the trust, such possession by him could not be adverse to her, and the statute of limitations did not begin to run against her during her lifetime.—82 Ala. 574, *supra; McCarthy v. McCarthy*, 74 Ala. 546; *Whetstone v. Whetstone*, 75 Ala. 495; *Hastie v. Aiken*, 67 Ala. 313; *Causler v. Whatten*, 62 Ala. 358; *Blackwell v. Blackwell*, 33 Ala. 57.

Immediately on the death of the wife, the statutory trust terminated, and he "became the owner for life, and by no act of his or of his vendor could the title of the heir in reversion be affected. The statute of limitations could not begin to run against the reversioner until his death."—*McLeod v. Bishop*, 110 Ala. 646; *Pickett v. Pope*, 74 Ala. 122; *Bass v. Bass*, 88 Ala. 408; *Gindrat v. Western Ry.*, 96 Ala. 162.

W. M. BLAKELY, *contra.*—The bill is without equity and seeks to set up and maintain a stale demand.—*Rives v. Morris*, 108 Ala. 527; *Robinson v. Pierce*, 118 Ala. 273; *Johnson v. Johnson*, 5 Ala. 90; *McArthur v. Carrie*, 32 Ala. 75; *McCartney v. Bone*, 40 Ala. 533; *Nettles v. Nettles*, 67 Ala. 519; *James v. James*, 55 Ala. 532; *Scruggs v. Decatur Land Co.*, 86 Ala. 176; *Harrison v. Heflin*, 54 Ala. 561.

The demand sought to be enforced is barred by the statute of limitations of ten years.—*Scruggs v. Decatur Land Co.*, 86 Ala. 176; *Nettles v. Nettles*, 67 Ala. 519; *James v. James*, 55 Ala. 531; *Robinson v. Pierce*, 118 Ala. 273; *U. S. v. Taylor*, 104 U. S. 222; *Perkins v. Cart-*

*mel,* 4 Harr. (Del.) 270; *Rickards v. Watkins,* 56 Mo.
554.

The general rule is that when a trustee unequivocally
repudiates the trust and claims the estate as his own
and such repudiation and claim are brought to the
knowledge or notice of the *cestui que trust,* or he has
notice of such facts as to put him on inquiry as to the
character of the holding of the trustee, such as record-
ing conveyances to the trustee in his individual capacity
from a party holding the superior title to the trust and
the like, the statute commences to run from the time
that the *cestui que trust* could by reasonable diligence
have ascertained that the trustee was no longer holding
for his benefit.—Same authorities as those last above
cited and also *Wilson v. Watkins,* 3 Pet. 52; *Needles v.
Martin,* 33 Md. 619; *Robinson v. Hook,* 4 Mason 152;
*Farnham v. Brooks,* 9 Pick. 212; *Boones v. Childs,* 10
Pet. 223; *Speidel v. Hennice,* 120 U. S. 377; *Reynolds
v. Sumner,* 12 West (Ill.) 827; *Thomas v. Marry,* 113
Ind. 83; *Ward v. Harvey,* 111 Ind. 471; *Horne v. In-
gram,* 125 Ill. 198; *Brackin v. Newman,* 121 Ala. 311.

Although the complainant may have had a meritor-
ious claim if he had waited until witnesses and parties
are dead and papers and receipts are lost and destroyed,
before taking steps to enforce his claim, so that true
and generous equity cannot be done, or there might be
danger of doing injustice to the living, the court will
not recognize his claim, but will force him to bear the
fruits of his own laches and decline to open up trans-
actions closed by long lapse of time.—*Rives v. Morris,*
108 Ala. 527; 12 Am. & Eng. Ency. Law (1st ed.), 440,
551, 589.

HARALSON, J.—The sales under the mortgages were
attended by no secrecy, but were openly made, after
due advertisement of the same, at the places they were
advertised to take place, and the deeds from the mort-
gagees to the purchaser, Robert Park, in full execution
of the foreclosures, were very soon thereafter,—on the
20th January, 1879,—duly recorded in the probate of-
fice. Indeed, from the averments of the bill it would ap-

pear that Robert Park acted for the mortgagees and purchased the property for the purpose of afterwards conveying the same to the said Howard Park. The latter was the owner of the Lemuel Park and Charles McDade mortgages, and acted for his wife, Janie, with her knowledge and consent in the foreclosures. The power to foreclose her mortgage having been bestowed upon her, before her marriage, however, she was capable, afterwards, of executing the power alone, without her husband's cooperation.—*Hardin v. Darwin,* 66 Ala. 61; *Gridley v. Wynant,* 23 How. (U. S.) 500. In all this there appears to have been no conduct on the part of Howard Park, his wife, Janie, or of Robert Park, such as would taint the sales with illegality.

The relation of Howard to his wife's statutory estate, if he continued to occupy such relation towards her after the foreclosure of the mortgages, necessarily ceased at her death, on the 28th May, 1878. Since that time, and since the foreclosure sales, he and those claiming possession under him, have continued to occupy and claim said lands as their own, and if he and they thus continued to hold for ten years, they had a perfect title in law and equity, free from any trust whatever.—*Brackin v. Newman,* 121 Ala. 311.

The only violation of any trust complained of is that alleged to have been committed by said Howard, aided by his said wife, Janie, in the purchase of said lands under said mortgages. Whatever may be said of his conduct in this respect, it is certainly true that the effect of what was done was to vest the legal title in him, subject only to the right of his wife seasonably expressed, to repudiate his action, and to ask a court of equity to declare the purchases made, to be for her benefit; and, if entitled to do this, after she had executed her deed to the purchaser at the foreclosure sale, she could only have done so by offering to do equity by paying back to him the amounts paid out by him in the purchases with interest, and other lawful charges thereon. She died, as stated, on the 28th May, 1878, without ever having sought to disaffirm these transactions, and was thus prevented to do so afterwards. There was

no express trust between the complainant and the said Howard, and the only one that could be said, in any event, to exist between them, was a constructive trust, arising by operation of law, and this he seeks by his bill to enforce. It is as the heir of said Janie, and not otherwise, he claims. Whenever the statute of limitations began to run against her, it did as to him.

The bill makes a plain case of repudiation by her and her husband of the statutory trusteeship between them, and shows the assertion of a title by him under his purchases at said mortgage sales, and the conveyances by the mortgagees to him, in hostility to the world. When this was done, in open repudiation of any claim or right of complainant, as a remainderman, to these lands, complainant had a right to resort to a court of equity to protect his interests, if he had any, and to compel the grantee, Howard Park, to respect his original trust. "A trustee of an express trust, purchasing at his own sale, commits an open and conclusively prejudicial breach of his trust, yet his purchase discharges the express trust, and converts him into a constructive trustee, of which character the *cestuis que trust* may avail themselves by a proceeding in equity seasonably begun,—within two years under our rulings, unless there be special circumstances justifying greater delay."—*Robinson v. Pierce,* 118 Ala. 275, 295, and authorities there cited; *Haney v. Legg,* 129 Ala. 619; *Brackin v. Newman,* 121 Ala. 311. The complainant is not shown to have been under any legal disability to sue at the time of the alleged breach of trust, and from aught appearing, he might have filed his bill in 1878 or, at the latest, in 1879, to claim and protect his interests. If it be said that he did not know of this repudiation of his rights in those years, it does appear that in 1879, by due diligence he might have ascertained the fact. The deeds that disclosed it were of record in the probate court in January, 1879. This bill was not filed until the 13th May, 1898, and was barred by the lapse of time, to say nothing of the question of laches, or any right he may have had originally to recover.

Affirmed.