(76 South. 124)

VEITCH et al. v. WOODWARD IRON CO.
(6 Div. 308.)

(Supreme Court of Alabama. May 10, 1917.)

1. TRUSTS ⬤➡365(2)—ACTIONS—LIMITATIONS —CONSTRUCTIVE TRUST.

The grantee under a deed reciting facts which charge him with notice that grantor has executed conveyance in breach of express trust is a constructive trustee, remedy against whom may be barred by lapse of time.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 570.]

2. LIMITATION OF ACTIONS ⬤➡99(2) — CONSTRUCTIVE TRUST.

Where a bill alleges that land was conveyed to defendant's predecessor in title by deed reciting facts charging him with notice that breach of an express trust had been committed, averments of complainants' ignorance of their rights and mere silence or passiveness on part of defendant do not show actual fraud within Code, § 4852, providing that cause of action for fraud may be prosecuted within one year after its discovery.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 478.]

3. EQUITY ⬤➡219 — PLEADING — DEMURRER —LACHES.

A demurrer will lie for laches appearing on the face of the bill.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 496, 498-500.]

4. TRUSTS ⬤➡365(3)—ESTABLISHMENT—LACHES—EXCUSES.

Where question whether alleged breach of trust, with notice of which defendant was chargeable through recitals of deed through which he traces title, was committed rests in parol, parties concerned all dead, and suit delayed 15 years after youngest complainant attained majority, action barred by laches, though complainants only recently learned their rights, irrespective of time defendant has been in possession.

[Ed. Note.—For other cases, see Trusts, Cent. Dig. § 570.]

5. EQUITY ⬤➡67 — LACHES — KNOWLEDGE OF FACTS—PRESUMPTIONS.

Acquiescence or knowledge in the assertion of an adverse right for an unreasonable time on which rule of laches is based will be presumed, after lapse of time, where the equity of the case demands.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 191-196.]

Appeal from Chancery Court, Jefferson County; A. H. Benners, Chancellor.

Action by James Veitch and others against the Woodward Iron Company. From judgment for defendant, plaintiffs appeal. Affirmed.

Theo J. Lamar, of Bessemer, and Henry Upson Sims, of Birmingham, for appellants. E. J. Smyer and V. J. Nesbit, both of Birmingham, for appellee.

THOMAS, J. The suit was brought on the 13th day of January, 1916, the bill praying to have declared a trust in land, and for an accounting. Demurrers were sustained to the bill as amended; and from the decree in that behalf the appeal is taken.

The averred facts are that Isaac Veitch, the father of appellant and five other children, purchased and paid for 230 acres of land (including that in question) in Jefferson county, Ala., from one R. C. Rockett, and was put in possession of the same by his vendor. No conveyance, however, was given the said Isaac by his vendor on the completion of the payment of the purchase money. After the death of Isaac Veitch, on December 24, 1881, the plaintiff's mother, Mary, on her petition, was on March 7, 1882, appointed administratrix of her deceased husband's estate; said petition for letters to the probate court alleging, among other things, that the decedent left certain real and personal property. This administration was never finally settled, as shown by the records of said court; and no exemptions, homestead or dower, appear to have been allowed or set apart in said court, as in such cases provided by the statutes. On October 24, 1899, said administratrix reported to the probate court that she had received from her husband's estate only certain personal property, which she claimed to be exempt to her as the widow of deceased, and prayed that she be discharged as such administratrix. This petition does not appear to have been passed upon; no formal decree to that effect was ever entered.

It is further averred that complainants, with their father and mother, had lived upon said lands as a home, and that complainants were entirely ignorant, until very recently, of their father's "claim and right of ownership thereto and of the nature of his title, and that there was a descent cast upon them at his death."

A warranty deed to 220 acres of land, including the lands in question, is of record, dated May 22, 1882, it purporting to have been acknowledged on May 17th, of that year, and to have been executed before witnesses on October 14, 1879, by said R. C. Rockett and wife to Mary Veitch. The averment of the bill as to the delivery of this deed is that:

"If indeed it was signed by the grantors, and witnessed on that date, as it purports to have been, it was never delivered prior to May 17, 1882."

On the 20th day of May, 1882, Mary Veitch executed to William J. Mims a conveyance to the 60 acres of land in question, reciting as a consideration that on April 4, 1880, a judgment was rendered in the circuit court against Isaac Veitch in favor of Mims on a suit commenced August 25, 1879, and in which service was perfected on said Veitch September 16, 1879; that said Veitch had purchased these lands before the commencement of said suit; the giving of bond by the vendor thereof, conditioned that he would make title to the land to Veitch upon the payment of the purchase price; the payment of the purchase money before, and on October 14, 1879, when Veitch procured his grantor to make a deed to these lands to his wife, Mary Veitch, "without any consideration except mutual love and

affection." It was further recited in said deed that an execution had regularly issued on said judgment on May 1, 1880, and since regularly issued without the lapse of an entire term; that the deed to Mary A. Veitch had never been recorded until after the said Mims had so acquired a lien on said land as such judgment creditor; and that he had no notice of the said deed (meaning that from Rockett to Mary Veitch). The full payment of said judgment was the recited consideration for the conveyance; and the description of the lands conveyed was of those described in the bill, and indicated in general terms as follows:

"The same being all of the said lands purchased as aforesaid by the said Isaac Veitch, and conveyed to the undersigned, except the homestead of the undersigned, which consists of 160 acres."

The reporter will set out the deed appearing as Exhibit B on page 9 of the record.

It is averred that the lands sued for are claimed by appellee through mesne conveyances as follows: Deed from said Mims to M. L. Porter of July 12, 1884; deed from Porter to Woodward Iron Company, a body corporate under the laws of Alabama, of June 21, 1898; and deed from the said Alabama corporation thereafter to the Woodward Iron Company, a body corporate under the laws of Delaware.

The specific averment of the bill by which complainants sought to explain their delay in bringing suit was in short:

"That in infancy they had been informed by their mother that the land was hers, and that she had disposed of it, and they never questioned the truth thereof; nor did they discover the fraud upon them until the month of February, or March, 1915, when they were informed of their rights by a relative who by accident discovered the fraud therein recited."

Complainants further offered to do full equity themselves, as might be found just and right in the premises.

It is charged in the bill:

"That the defendant cannot be heard to say that it and those under whom it claims have enjoyed 10 years' adverse possession of the said lands under claim of ownership; for there have not been 10 years of actual occupancy of said lands by the defendant and its predecessors adverse to your orators. Nor can the defendant be heard to say that it denies your orators' rights in the premises, since the defendant and its predecessors, from your orators' said mother down, had full notice from the records, as well as from the said deed from your orators' said mother to Mims, that your orators had an equity in said lands, and that the said holders of the legal title to the lands from your orators' said mother to the defendant were merely trustees for your orators' benefit, and that, if the said equity was unknown to your orators, they could assert the same as soon as they should find it out. Nor can the defendant be heard to say that 20 years have barred your orators' equity. Since there was no person during a great part of the time to assert your orators' rights but their said mother, the administratrix, and she had herself committed the first illegal act against them."

The several questions thus presented are: (1) Did the bill as amended contain equity? (2) If it set up an equitable title to the lands in complainants and others, was respondent shown to have had notice thereof, or notice of facts which, if followed up, would have resulted in knowledge of complainants' interest? (3) Or were complainants guilty of laches, or prevented by the statute of limitations from asserting their claim?

While the recitals in conveyances are prima facie true as to all parties thereto and privies in estate thereunder, such recitals are not binding on strangers or those who do not hold under and by such chain of title. Naugher v. Sparks, 110 Ala. 572, 18 South. 45; Smith v. Steiner, 172 Ala. 79, 55 South. 606; Jackson v. Tribble, 156 Ala. 480, 47 South. 310; Johnson v. Wood, 125 Ala. 330, 28 South. 454; Williamson v. Mayer Bros., 117 Ala. 253, 23 South. 3; Harton v. Little, 176 Ala. 267, 57 South. 851.

What effect had the recitals in the deed from Mary Veitch to William J. Mims, recorded May 22, 1882, as to giving notice of facts of complainants' equity, such as would put on inquiry parties and privies in estate under said deed?

In Dixie Grain Co. v. Quinn, 181 Ala. 208, 61 South. 886, Mr. Justice Somerville has collected the authorities; and it is there held that the record presence in the chain of title of a mortgage containing a power of sale charged subsequent purchasers with the duty of inquiry to ascertain whether there had been a foreclosure under the power as to the lands described in the mortgage.

In Gamble v. Black Warrior Coal Co., 172 Ala. 669, 672, 673, 55 South. 190, Mr. Justice Mayfield said:

"It is also equally well-settled law in this state that whatever is sufficient to put a party on inquiry is enough to charge him with notice. Means of knowledge may be equivalent to knowledge. Whatever is sufficient to put one on his guard and call for inquiry is notice of everything to which the inquiry would lead. * * * The complainant certainly had knowledge of facts sufficient to elicit inquiry as to the source of appellee's title, and the facts are undisputed that he could and would have ascertained this source had he instituted any inquiry. If the evidence of his and Brotherton's grantors (the patentees) is to be believed, Brotherton had actual notice of the deed from the patentees to Long before and at the time the patentees conveyed to him as trustee; their evidence being that they conveyed to Brotherton, as trustee, in order to cure a defect in the conveyance by them to Long, and that Brotherton knew, and represented to them, that such was the purpose of the conveyance to him."

Mr. Warvelle (Vendors, § 263) declares that it is difficult if not impossible to lay down any general rule as to what facts will in every case be sufficient to charge a party with notice or put him on inquiry; that a purchaser buying real property, of the title to which there must be evidence in writing is chargeable with notice of any infirmity of his title which the writing discloses. 1 Warvelle, Vendors (2d Ed.) § 262; Larkin v. Haralson, 189 Ala. 147, 66 South. 459; Robbins

v. Gilligan, 86 Ala. 254, 5 South. 568; Cresswell v. Jones, 68 Ala. 420; Corbitt v. Clenny, 52 Ala. 480; 2 Devlin on Deeds (3d Ed.) p. 1367, § 738a, and authorities. If he has notice of a prior claim, or equity, or of facts which, if followed up, would discover the truth, one is put under the duty of investigation, and, failing in this, is chargeable with knowledge of the facts which the inquiry would have disclosed. Buck v. Paine, 50 Miss. 648; Carter v. Portland, 4 Or. 339; Brinkman v. Jones, 44 Wis. 498.

Our court held in Dudley v. Witter, 46 Ala. 664, and in Jones, Adm'r, v. Shaddock, 41 Ala. 262, that the purchaser of lands or of slaves from a vendor in possession and claiming to own the property, but who has no legal title except as trustee for another, is chargeable with notice of the trust.

In the recent case of Winters v. Powell, 180 Ala. 425, 433, 434, 61 South. 96, 99, it is said:

"Mrs. Powell had no title or interest beyond her life estate. As to the interest in reversion she was a stranger. Neither her declarations as to the character and extent of the interest claimed by her, nor her exhibition of a deed from Pinson, who at the time of its execution had no title, will authorize a judgment destructive of the reversion. Her exhibition of that deed was no more than a declaration of title, and that of a questionable title; for its recital of a merely nominal consideration was enough to put her vendee on notice of its true state. 'A purchaser must be bound to inquire whether, beyond his own declarations, his vendor has any title to the property he is selling. Otherwise it would be in the power of any agent, tenant, or mere trespasser to deprive the owner of his property by a sale. To entitle himself to protection the purchaser must have purchased the legal title, and not be a mere purchaser without semblance of title.'"

It is well established that, where one purchases an estate from another having a mere legal title, knowing that in equity it belongs to another, such purchaser as against the equitable owner will be deemed fraudulent and void, and will be treated as a mere trustee of the equitable title. In McVey v. McQuality et al., 97 Ill. 93, 99, the court said:

"The answer of McVey himself admits that he knew that at the time of his death McQuality, together with his family, was residing on the land, and his possession was prima facie evidence of ownership at that time, and McVey is conclusively presumed to know that whatever rights McQuality had in the land not disposed of by [his] will, and of an inheritable character, devolved on his heirs, and his possession being constructive notice of his rights at the time of his death, it was the duty of McVey to have inquired of the heirs and ascertained the extent of their interest."

The case of Winters v. Powell, supra, was to the same effect as to notice.

Our court has declared that when the vendee pays the purchase money and is put in possession by his vendor, and a conveyance is not executed, the purchased title is that of a perfect equity, the legal title being held by the vendor as trustee for such purchaser; that a constructive trust arises; and that upon the death of such purchaser his title descends to heirs or devisees. Love v. Butler, 129 Ala. 531, 30 South. 735; Tumlin's Case, 195 Ala. 457, 466, 70 South. 254; Bowen v. Lansing, 57 L. R. A. 646, note "c."

Where, however, one pays the purchase price, and the legal title to the property is taken in another, a resulting trust arises (Waddail's Case, 72 South. 141); that is, if it was not intended for a donation to the grantee of the conveyance. Thus, when the purchase price is paid by a parent or a husband, and the title is taken in the name of the wife or that of a child, the presumption of a resulting trust does not arise from the mere fact that the purchase money was supplied by the parent or husband and the title taken as stated; the presumption is that a donation was intended. Long v. King, 117 Ala. 423, 23 South. 534; Waddail v. Vassar, supra.

In Perry's Trusts, § 147, note "a," it is stated that the rule that a conveyance by a husband to his wife is presumed to be a gift or advancement does not apply when his entire estate is conveyed; that is to say, in such case a resulting trust will be more readily inferred, as it is always the intention of the party whose property is conveyed that must control. Pool v. Phillips, 167 Ill. 432, 47 N. E. 758; Bacon v. Devinney, 55 N. J. Eq. 449, 37 Atl. 144; Lane's Case, 80 Me. 570, 16 Atl. 323; Gilliland's Case, 96 Mo. 522, 10 S. W. 139; Moore v. Crawford, 130 U. S. 122, 9 Sup. Ct. 447, 32 L. Ed. 878.

The prima facie rule that the husband or parent intends the benefit to pass to the wife or child can be safely applied, in the absence of written direction to that effect, only when the conveyance to such wife or child is made during the parent's or husband's lifetime. In Tumlin v. Tumlin, 195 Ala. 457, 70 South. 254, the husband conducted the transaction that transferred his perfect equity to his wife, and thereafter filed a pleading in the courts of the state of Georgia that showed it to have been his intent to vest his right or title in his wife. In the Waddail Case, supra, it is held that in a bill to have a resulting trust declared the allegation that plaintiff paid the consideration to one reared and regarded as a son, at his instance, to purchase the land "for her [plaintiff]," and he (the adopted son) had the conveyance made to himself, is sufficient to rebut the presumption of advancement arising from the relation of parent and child, and that a resulting trust is impressed on the property. If the only evidence of the husband's intent to make an advancement to the wife is found in her own recitals in a deed made by herself after the husband's death, it is not only not conclusive of the fact of advancement, but tends to rebut the presumption that an advancement was intended.

The deed from Rockett to Mrs. Veitch, though bearing date 1879, which was during the lifetime of Isaac Veitch, was not acknowledged nor recorded until 1882, after the death of said Isaac. This was a suspicious

circumstance, at least as touching the true date of its execution and delivery, that should have put a purchaser ion inquiry as to the possession of the property, and its ownership, at the date of Isaac's death.

It is an indispensable requisite to the validity of a conveyance, whatever be the recited or the real consideration, that it be delivered in the lifetime of the grantor. "There can be no delivery by a dead hand." Tarwater v. Going, 140 Ala. 273, 37 South. 330; Culver v. Carroll, 175 Ala. 469, 472, 57 South. 767, Ann. Cas. 1914D, 103; Jones v. Jones, 6 Conn. 111, 16 Am. Dec. 35. The rule requiring delivery in the lifetime of the grantor has not been extended beyond that of an inchoate delivery in the grantor's lifetime, to become absolute on his death. Foster v. Mansfield, 3 Metc. (Mass.) 412, 37 Am. Dec. 154.

In Culver's Case, supra, the deed was made to the wife as grantee, and embraced all of the grantor's property; it was in the handwriting of a resident lawyer and notary public, recited the consideration of love and affection, and contained the direction that the wife pay the grantor's just debts; and on the same day, and very soon after the making of the conveyance, as was shown, the grantor committed suicide. It was held that such facts were not sufficient to show actual delivery. See, also, Fitzpatrick v. Brigman, 133 Ala. 242, 31 South. 940.

On March 7, 1882, when the said widow, as the administratrix of her husband's estate, reported to the probate court of Jefferson county, Ala., the death of her husband, and that he had left real and personal property, she regarded certain land as that of the husband. Two months thereafter (May 22, 1882) she recorded the Rockett deed and conveyed the 60 acres in question to appellee's predecessor in title. It was not a coincidence that the two deeds were acknowledged within three days of each other, that they were filed for record and recorded in the probate office on the same day, and that they were recorded in the same book (Deed Book 51, pp. 58, 59, and 61, 62). Unquestionably this was an effort to perfect the title, and to convey the 60 acres of land to William J. Mims.

On October 24, 1899, Mrs. Veitch reported to the probate court that she had received no properties of the said estate except exempt personalty. She had, however, recorded the deed from Rockett to her to all of the husband's land, the 230 acres, and had conveyed 60 acres thereof to Mims.

A vitally important question is the date of the delivery of the deed of the Rocketts to Mary Veitch, whether on or about the date it purports to bear, or on or about that of its acknowledgment. A deed becomes effectual as a conveyance of title only from the date of its delivery. Certain verities there are attached to certificates of acknowledgment to conveyances (Grider v. A. F. L. M. Co., 99

Ala. 281, 12 South. 775, 42 Am. St. Rep. 58; Qualls v. Qualls, 72 South. 76[2]) that are not of question here. The acknowledgment by Rockett and wife made on May 17, 1882, that, being informed of the contents of the conveyance, they executed the same voluntarily on the day the same bore date (October 14, 1879), is not conclusive that the conveyance was delivered on that date. The disputable presumption will be indulged, in the absence of evidence to the contrary, that the date of the deed was the date of its delivery. Where, however, the acknowledgment necessary to the execution of a deed bears a date different from that of the deed, the date of the acknowledgment is presumed to have been the date of the delivery. Fitzpatrick v. Brigman, 130 Ala. 450, 30 South. 500. The Qualls conveyance contained an acknowledgment in due form; yet the certifying officer had no jurisdiction of the grantor, and the deed was never actually executed or delivered by the purported grantor. The deeds in question in Culver's Case, supra, and the Tarwater-Going Case, 140 Ala. 273, 37 South. 330, were duly executed and acknowledged, and by the grantor left with a third party with directions. It was held that it did not sufficiently appear that it was the grantor's intention that such acts should constitute a delivery of the conveyance to the grantee named therein.

The Tumlin Case, 195 Ala. 462, 70 South. 254, declared that, as a deed does not generally show upon its face a delivery, evidence must ordinarily come from without; and parol evidence must be admitted when a question of delivery arises. 1 Dev. Deeds (3d Ed.) 266. The fact of delivery is a matter of intention, to be collected from the acts and declarations of the parties having relation thereto. Elsberry v. Boykin, 65 Ala. 336; Napier v. Elliott, 146 Ala. 213, 40 South. 752, 119 Am. St. Rep. 17; Gulf Red Cedar Co. v. Crenshaw, 169 Ala. 606, 53 South. 812; Culver v. Carroll, supra.

As to laches and the removal of the bar of the statute of limitation, complainants aver their minority and their ignorance of their rights until less than one year before the bill was filed. By section 4846 of the Code a minor is given 3 years after attaining majority within which to bring his action, or the period allowed by law for that purpose if it be less than 3 years, with the proviso that no disability shall extend the period of limitations so as to allow such actions to be commenced, or entry or defense made, after the lapse of 20 years from the time the cause of action or right accrued. Dallas Compress Co. v. Smith, 190 Ala. 423, 67 South. 289; Stockdale v. Cooper, 193 Ala. 258, 69 South. 110.

In the instant case the cause of action accrued on a breach of the trust, the delivery of the deed from Rockett and wife to complainants' mother, Mary A. Veitch, on October 14, 1879, or on May 17, 1882, as the true

[2] 196 Ala. 524.

date of delivery may have been. Thus, in ordinary course, the statute of limitations would have begun to run, as to the then adult heirs of Isaac Veitch, deceased, from the date of this' delivery, and, as to the minor heirs of said Veitch, according to' the terms of the statute we have set out. The youngest child is averred to have been one year' of age at the date of the death of his father (December 24, 1881), thus fixing the date for the attainment of his majority as December 24, 1900. Allowing the statutory period (Code § 4846) of 3 years thereafter, the bar of the statute was .complete as to this youngest child on December 25, 1903, 13 years before the suit was brought, and about 33 years' after the accrual of the cause of action.

The averment of the amended bill seeking to avoid the bar of the statute was that defendant or those under whom it claims had not had ten years' adverse possession of said lands under claim of ownership. Lide v. Park, 135 Ala. 131, 33 South. 175, 93 Am. St. Rep. 17.

Looking to the further rules of limitations that affect the rights of a cestui que trust under the two classes of trusts, express or constructive, the settled law in this state is that, as between the cestui que trust and the trustee, no lapse of time will bar the former of his remedy for a breach of the trust. The privity existing between them makes the possession of the one, the possession of the other; and hence there is no adverse title. The fraud inherent in the breach of such trust estops the trustee perpetrating the same from denying the possession of the cestui que trust through him as such trustee. Such was the rule long adhered to by the English courts. Blackford v. Wade, 17 Vesey, 97; Havedale v. Lord Ainnesley, 2 Sch. & Lef. 633.

[1] A different rule prevails where the trustee of an express trust has conveyed the trust estate to a purchaser with knowledge or notice, in which case the purchaser has impressed upon him the character of a constructive trustee; yet the lapse of time operates to bar the beneficiary of his remedy against such constructive trustee. Dallas Compress Co. v. Smith, supra; Smith v. Dallas Compress Co., 195 Ala. 534, 70 South. 662; Robinson v. Pierce, 118 Ala. 295, 24 South. 984, 45 L. R. A. 66, 72 Am. St. Rep. 160; Brackin v. Newman, 121 Ala. 311, 26 South. 3; Tarleton v. Goldthwaite, 23 Ala. 346, 358, 58 Am. Dec. 296; 3 Pom. Eq. Jur. §§ 1030, 1048.

The allegations of the bill of fraud are not such as to remove the bar of the statute of limitation; they are not such as to charge Mims and his subsequent grantees with any actual fraud, but charge facts tending to impress on Mims and his grantees the character of constructive trustees, whose trusts may be barred by limitations or defeated by the rule of repose.

[2] The averment of complainants' igno-rance of their rights, implying mere silence or passiveness on the part of an adversary, is not the equivalent of a charge of actual fraud such as is necessary "to avail of the exception provided by the statute of limitation." Code, § 4852; Smith v. Dallas Compress Co., supra; Duncan v. Watson, 198 Ala. 180, 73 South. 448.

It may be generally stated that 20 years is a period beyond which courts are not disposed to permit human transactions to be disturbed by judicial investigation, and the presumptions indulged, though not always indisputable, are against the right thus sought to be litigated. The doctrine is broader and more comprehensive than a mere statute of limitations based on analogous principles of repose and of security. Harrison v. Heflin, Adm'r, 54 Ala. 552; Greenlees v. Greenlees, 62 Ala. 330; Alabama, etc., Co. v. Gulf Coal & Coke Co., 171 Ala. 544, 54 South. 685; Jefferson v. Pettus, 132 Ala. 674, 32 South. 663; Matthews v. McDade, 72 Ala. 388; Garrett's Case, 69 Ala. 429; McArthur v. Carrie, 32 Ala. 75, 70 Am. Dec. 529.

[3] It is a well-settled rule of practice that a demurrer will lie for laches appearing on the face of the bill as for statutory limitations. Scruggs v. Decatur Min. Co., 86 Ala. 173, 5 South. 440; Gayle v. Pennington, 185 Ala. 53, 64 South. 572; Fowler v. Alabama, etc., Co., 164 Ala. 414, 51 South. 393; Greenlees' Case, supra.

[4] As against this presumption, have complainants brought themselves within a recognized exception thereto? Does the bill show laches on complainants' part in not bringing their suit under the circumstances of the case? For laches must be tested by the particular circumstances, and is the equitable rule of that case, that permits or denies to a complainant the right to proceed. Can the disputed fact of the delivery of the Rockett deed, resting largely in parol, be now established or disproved with any certainty of reaching the truth after the expiration of 35 years and long after the attaining of majority by the youngest of Isaac Veitch's children? Will such child be permitted to controvert with a subsequent purchaser holding under the complainants' mother's conveyance of the land as her own individual estate the date of the delivery of the Rockett deed and the other questions establishing complainants' equity?

As to laches, in Dallas Compress Co. v. Smith, supra, the court said that:

A remainderman "is under no duty to assert what is apparent on the face of defendant's title, and, where there is no acquiescence in or assent to a possession that is in law and in fact adverse, there is no laches."

In Robinson v. Pierce, supra, where the defendant, by a trust deed, had taken the entire legal estate, it was held:

That the effect of the conveyance was to divest the remaindermen of their title, and that they had "no possibility of becoming invested with one, except by suing in equity to acquire it, based upon the independent cause of relief

conferred by the breach of the trust"; that to this equitable proceeding to acquire a title "staleness of demand is pleaded, and to disallow the defense would be to overrule that great and invaluable principle of equity which has stood for centuries requiring the suitor to be diligent."

The court pertinently inquires:

"What conceivable reason can there be for exempting a person from this rule of diligence who sues in equity to acquire an estate in remainder or reversion, any more than one suing in equity to acquire an estate in possession?"

In Winters v. Powell, 180 Ala. 435, 61 South. 96, the property in question was subject to the life estate of Mrs. Powell, and the court pointed out that until her death there never was a time when the complainants could have had judgment presently, upon the possession or enjoyment of the property, hence no default or delay in the assertion of their rights could be imputed to complainants and there was no bar by prescription. This case is not an apt authority for appellants.

In the instant case there were no successive estates, as the rights of remaindermen, or reversioners, or life tenants, involved; only the right to pursue in equity the possession of their equitable estate, to which they had the right of possession for more than 30 years, if only they had exercised it by the appropriate proceedings.

In Rives v. Morris, 108 Ala. 527, 18 South. 743, Chief Justice McClellan, writing to the rule of laches, declared that where, from delay, any conclusion the court arrived at must at best be conjectural, where the original transactions have become so obscured by lapse of time, loss of evidence, and death of parties as to render it difficult if not impossible to do justice, the complainant will by his laches be precluded from relief, even though the court should be satisfied that the original claim was unjust, or has been satisfied, and even though the demand is not barred by the statute of limitations or the doctrine of prescription. Lucas v. Skinner, 194 Ala. 492, 70 South. 88; Waddail v. Vassar, 72 South. 14;[3] Hauser v. Foley & Co., 190 Ala. 437, 441, 67 South. 252; De Graffenried v. Breitling, 192 Ala. 254, 68 South. 265; Snodgrass' Case, 176 Ala. 276, 58 South. 201; s. c., 185 Ala. 155, 64 South. 594; Braun v. Pettyjohn, 176 Ala. 592, 58 South. 907.

In Butt v. McAlpine, 167 Ala. 521, 52 South. 420, it was said of the doctrine of laches that "the basis and hope of the doctrine is repose, repose in titles bona fide claimed and repose against litigation," and that the doctrine will be applied after a lapse of more than 30 years in asserting a trust in lands, though the assignor and successors in right have not been in possession of the land conveyed under a general assignment, and irrespective of whether the adverse party and his predecessors in bona fide claim of title

[3] 196 Ala. 184.

were in actual possession in whole or in part of the land. Mr. Justice McClellan said:

"If it should be ruled that the only actual possession, in whole or in part under color of title extending such partial possession to the whole, not otherwise actually adversely possessed, would operate to impose the duty on the beneficiary of a resulting trust to act, if he would avoid the presumption arising from inactivity for 20 years or more, in assertion of his mere equity, the result would be to create the anomaly of relieving the beneficiary of the application of the presumption on a condition that was entirely consistent with the implied trust right of the beneficiary; to, in effect, shift the inspiration of activity to the bona fide claimant of the legal title to voice his claim by actual possession, at least in part, of the land in which the resulting trust existed."

[5] It is apparent that the doctrine of repose, the basis of the rule of laches and of prescription, is grounded on the natural justice of the circumstances of each case that may or may not affect a right of procedure in equity. It is not primarily a question of possession, but one of acquiescence in the assertion of adverse right, and unreasonable delay on the part of the real owner in asserting his right, to the prejudice of the adverse party. Haney v. Legg, 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81; Butt v. McAlpine, supra. Acquiescence involves knowledge of the facts which entitle to relief, and manifests a want of diligence, which will not be allowed to prejudice adversary interests. Union Cemetery Co. v. Jackson, 188 Ala. 599, 65 South. 986; James v. James, 55 Ala. 525. This acquiescence on knowledge after lapse of time will be presumed where the equity of the case demands.

The question of the delivery of the deed of Rockett to Mary Veitch before or after the death of Isaac Veitch rests in parol, and is a most important inquiry of fact in this trial. It would not be just to appellee, after the lapse of 37 years, to require it to contest with appellants the important fact of the delivery of said deed, especially in view of the facts that their father has been dead many years, and that their mother was the perpetrator of whatever fraud was practiced on complainants.

Moreover, there has never been a time since the youngest child attained majority (which was 15 years before the bringing of this suit) when either of complainants could not have litigated with appellee or its predecessors in title the former's equitable title and right of possession in and to the land in question. It will not be permitted now.

The foregoing authorities, applied to the facts in the bill as last amended, sustain the decree of the chancellor on demurrer, and the decree is accordingly affirmed.

My Brothers ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur in the result, but do not wish to concede that there was a trust.